IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| KARIN JORDAN AGUDELO, TED MORENO, MARIA CAMILA OLIVEROS-JORDAN, ALEJANDRO OLIVEROS-JORDAN, DAVID OLIVEROS-JORDAN, MILTON MORENO GARZON, ADOLFO NARANJO, JUAN GABRIEL NEIRA JIMENEZ, HILDA MORENO, LAURA GOMEZ, NOE GOMEZ, JENNIFER STEPHANIE MARTINEZ FLORES, ANYELLY MONTOYA, FERNANDO JAVIER FIGUEROA, YAMIL FIGUEROA LOBATO, NORMA BEATRIZ ARATA, MARTIN LOBATO, and JOHN DOES 1-50, natural persons, and EASY FAST, INC., CALIFORNIA L.A. FASHION, INC., ALL SELLER, INC., ALLPRODUCTS CORP., SMILE DISTRIBUTION, INC., SOLODERMA, LLC, OCEAN ONE INVESTMENTS PRO, LLC, and JOHN DOES 51-100, business entities, | § | CASE NO. 3:19-cv-03027-D |
| | § | |
| Defendants. | § | |

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND BRIEF IN SUPPORT BY DEFENDANTS SOLODERMA, LLC, ANYELLY MONTOYA AND MARTIN LOBATO**

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. ARGUMENT & AUTHORITIES .......... 6

A) Introduction .......... 6

B) Summary of Law on Personal Jurisdiction .......... 7

C) The Court Does Not Have General Jurisdiction over Defendants .......... 8

D) The Court Does Not Have Specific Jurisdiction over Defendants .......... 10

(1) Trademark-Related Claims (Count 1-5) .......... 10

(2) Tortious Interference With Contract Claim (Count 6) .......... 16

(3) Breach of Contract Claim (Count 7) .......... 17

(4) Montoya Cannot Be Liable in Her Personal Capacity for Any Alleged Infringing or Tortious Behavior by Soloderma .......... 19

E) An Exercise of Personal Jurisdiction Over Defendants Would Not Comport With "Traditional Notions of Fair Play and Substantial Justice" .......... 21

IV. CONCLUSION .......... 23

V. PRAYER .......... 23

## TABLE OF AUTHORITIES

**CASES**

*Admiral Ins. Co., Inc. v. Briggs*,
No. CIV.A.302CV0310P, 2002 WL 1461911 (N.D. Tex. Jul 02, 2002)....................................... 20

*Ainsworth v. Moffett Engineering, Ltd.*,
716 F.3d 174 (5th Cir. 2013) ................................................................................................ 10

*Allred v. Moore & Peterson*,
117 F.3d 278 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998)............................................. 14

*American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*,
115 Fed.Appx. 662 (5th Cir. 2004)........................................................................................ 20

*Applied Food Scis., Inc. v. New Star 21, Inc.*,
No. CIV.A. W-07-CA-359, 2009 WL 9120113 (W.D. Tex. Jan. 23, 2009) ............................... 13

*Asarco, Inc. v. Glenara, Ltd.*,
912 F.2d 784 (5th Cir. 1990) .................................................................................................. 9

*Autoflex Leasing-Dallas I, LLC v. Autoflex LLC*,
No. 3:16-CV-2589-D, 2017 WL 713667 (N.D. Tex. Feb. 23, 2017) .......................................... 13

*Bearry v. Beech Aircraft Corp.*,
818 F.2d 370 (5th Cir. 1987) .................................................................................................. 9

*BMC Software Belgium, N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002)..................................................................................................... 19

*Bridas S.A.P.I.C. v. Government of Turkmenistan (“Bridas II”)*,
447 F.3d 411 (5th Cir.), *cert. denied*, 127 S.Ct. 664 (2006)......................................................... 21

*Brothers v. Print, Inc.*,
No. CIVA 3:07-CV-0415-B, 2007 WL 3331974 (N.D. Tex. Nov 08, 2007)..........................20-21

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
137 S. Ct. 1773 (2017).......................................................................................................15-16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ......................................................................................... 8, 15, 22

*Calder v. Jones*,
465 U.S. 783 (1984).............................................................................................................. 14

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
322 F.3d 376 (5th Cir. 2003) .......... 9, 22

*Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*,
963 F.2d 90 (5th Cir. 1992) .......... 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).......... 8-9

*Dynamo v. Warehouse of Vending & Games*,
168 F.Supp.2d 616 (N.D. Tex. 2001) .......... 20

*Fernandez-Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) .......... 19-20

*Freudensprung v. Offshore Tech. Srvs., Inc.*,
379 F.3d 327 (5th Cir. 2004) .......... 18

*Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*,
255 Fed.Appx. 775 (5th Cir. 2007).......... 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011).......... 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984).......... 9

*Interactive Life Forms, LLC v. Weng*,
2013 WL 12116148 (W.D. Tex. Apr. 8, 2013).......... 13

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945).......... 7

*Int'l Truck & Engine Corp. v. Quintana*,
259 F. Supp. 2d 553 (N.D. Tex. 2003) .......... 11

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011).......... 10

*Jones v. Petty-Ray Geophysical Geosource*,
954 F.2d 1061 (5th Cir. 1992) .......... 18

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*,
438 F.3d 465 (5th Cir. 2006) .......... 10-11

*Meyer v. Mendelson*,
No. CIV.A.3:05-CV-1344-M, 2006 WL 66707 (N.D. Tex. Jan 11, 2006) .................................. 21

*Mink v. AAAA Development LLC*,
190 F.3d 333 (5th Cir. 1999) .......................................................................................... 6, 8

*Moncrief Oil Intern., Inc. v. OAO Gazprom*,
481 F.3d 309 (5th Cir. 2007) .......................................................................... 14-15, 17-18

*Monkey Boy Graphix, Inc. v. Anton Sport, Inc.*,
2008 WL 11349966 (N.D. Tex. Aug. 20, 2008)............................................................ 13

*Monkton Insurance Services, Limited v. Ritter*,
768 F.3d 429 (5th Cir. 2014) ............................................................................................ 9

*Monistere v. Losauro*,
No. CIV.A. 13-22, 2013 WL 6383886 (E.D. La. Dec. 4, 2013).................................................. 13

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*,
310 F.3d 374 (5th Cir. 2002) ........................................................................................ 8, 23

*Organic Metals v. Aquasium Techs., Ltd.*,
No. CIV.A.303CV3062H, 2004 WL 718960 (N.D. Tex. Apr. 2, 2004) ..................................... 20

*Origin Instruments Corp. v. Adaptive Comput. Sys., Inc.*,
1999 WL 76794 (N.D. Tex. Feb. 3, 1999)....................................................................... 14

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 (5th Cir. 2001) ...................................................................................6, 14-15

*Paolino v. Argyll Equities, LLC*,
401 F.Supp.2d 712 (W.D. Tex. 2005), *aff'd*, 211 Fed.Appx. 317 (5th Cir. 2006) .......................... 7

*Paterson v. Aker Solutions Incorporated*,
826 F.3d 231 (5th Cir. 2016) ............................................................................................ 9

*People Sols., Inc. v. People Sols., Inc.*,
2000 WL 1030619 (N.D. Tex. July 25, 2000) ................................................................... 14

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) .......................................................................................... 16

*Rogue v. Bank One, N.A.*,
No. 4:02-CV-868-A, 2002 WL 31875609 (N.D. Tex. Dec. 16, 2002)......................................... 20

*Rush v. Savchuk*,
444 U.S. 320 (1980)................................................................................................... 7, 12

*Searcy v. Parex Res., Inc.*,
496 S.W.3d 58 (Tex. 2016) ........ 17

*Shippitsa Ltd. v. Slack*,
No. 3:18-CV-1036-D, 2019 WL 277613 (N.D. Tex. Jan. 22, 2019),
*reconsideration denied*, 2019 WL 2372687 (N.D. Tex. June 5, 2019) ........ 12-13

*SMK Painting Co. v. Flournoy Constr. Co.*, LLC,
No. Civ. A. 3:99-CV-0916-G, 1999 WL 1017779 (N.D. Tex. Nov. 4, 1999) ........ 18

*Springboards to Educ., Inc. v. Hamilton Cty. Read 20*,
No. 3:16-CV-2509-B, 2017 WL 3023489 (N.D. Tex. July 14, 2017) ........ 13

*Stroman Realty, Inc. v. Wercinski*,
513 F.3d 476 (5th Cir. 2008) ........ 14-15

*Stuart v. Spademan*,
772 F.2d 1185 (5th Cir. 1985) ........ 19

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 12, 15-16

*Walker v. Newgent*,
583 F.2d 163 (5th Cir. 1978), *cert. denied*, 441 U.S. 906 (1979) ........ 19

*Wien Air Alaska, Inc. v. Brandt*,
195 F.3d 208 (5th Cir. 1999) ........ 15

*Wilson v. Belin*,
20 F.3d 644 (5th Cir. 1994) ........ 9

*Zubarik v. Rubloff Development Group, Inc.*,
No. CIV. 3:05-CV-1491-H, 2006 WL 842368 (N.D. Tex. Mar 31, 2006) ........ 21

*721 Bourbon, Inc. v. House of Auth, LLC*,
140 F. Supp. 3d 586 (E.D. La. 2015) ........ 12

**RULES**

FED. R. CIV. P. 12(b)(2) ........ 2, 23

**CONSTITUTION**

U.S. CONST. AMEND. 14 ........ 22

## I. INTRODUCTION

Plaintiff Mary Kay, Inc. ("Plaintiff" or "Mary Kay") filed its complaint against Defendants Soloderma, LLC ("Soloderma"), Anyelly Montoya ("Montoya") and Martin Lobato ("Lobato") (collectively "Defendants"), as well as multiple other parties, asserting several causes of action for trademark infringement, breach of contract and tortious interference with existing contracts.[1] Mary Kay contends the Court has personal jurisdiction over all of the Defendants because they have allegedly advertised and sold infringing products bearing Mary Kay's trademarks to consumers within Texas through multiple highly interactive commercial websites with the knowledge that Mary Kay is located in Texas and harmed in Texas as a result of Defendants' alleged sales of infringing products to Texas residents.[2]

No basis exists for the Court to assert personal jurisdiction over Defendants. First, Mary Kay improperly ropes all of the more than 20 parties it sued herein into a collective of "defendants" without offering a prima facie case of personal jurisdiction over any party individually, including the moving Defendants, as is required. Further, Defendants do not have sufficient "minimum contacts" with Texas to justify imposing personal jurisdiction over them because, *inter alia*, there is no evidence that Defendants have purposefully aimed or marketed any alleged infringing products at the State of Texas, nor that Defendants have sold any alleged infringing products in the State of Texas. Finally, the fact that Mary Kay happens to be located in Texas and allegedly feels the "effects" of any alleged wrongdoing by Defendants in the State is not enough to justify haling Defendants into court in the State absent some purposeful action by Defendants aimed at the State. None exists here.

[1] Complaint (Dkt. 1).
[2] Id. at ¶ 62.

Thus, the exercise of personal jurisdiction by the Court over Defendants would violate the Due Process Clause of the United States Constitution. Accordingly, Mary Kay's claims against these Defendants should be dismissed for want of jurisdiction under Fed. R. Civ. P. 12(b)(2).

## II. FACTUAL BACKGROUND

Soloderma is a limited liability company organized under the laws of California.[3] Soloderma's principal place of business is located at 21781 Ventura Blvd., Suite 143, Woodland Hills, California 91364.[4] Montoya is the sole member of Soloderma.[5]

Soloderma is not required to and does not maintain a registered agent for service in Texas.[6] Soloderma does not maintain a place of business, office or telephone number in Texas and has no employees, servants or agents within the state of Texas.[7] Soloderma does not perform any of its operations in Texas.[8] Soloderma does not own, lease or rent any real or personal property located in Texas.[9] Soloderma does not maintain any type of bank or securities account in Texas.[10] Soloderma does not pay taxes in Texas.[11] Soloderma does not advertise or market itself in Texas.[12]

Soloderma has not physically performed any acts in Texas purposefully directed toward Texas or Texas residents.[13] Soloderma does not engage and has not engaged in business in Texas and has not committed any tort within the state of Texas or elsewhere.[14] Soloderma's

[3] Declaration of Anyelly Montoya, attached hereto as Exhibit A, at ¶ 2 (App. 001).
[4] Id.
[5] Id.
[6] Id. at ¶ 3 (App. 002).
[7] Id.
[8] Id. at ¶ 4 (App. 002).
[9] Id.
[10] Id.
[11] Id.
[12] Id.
[13] Id. at ¶ 5 (App. 002).
[14] Id.

records are all located at its headquarters in California.[15] All of Soloderma's employees are located in California.[16]

Soloderma has never directly marketed any products for sale, including any Mary Kay products, in the State of Texas.[17] Soloderma has never directly sold any products, including any Mary Kay products, to an individual or entity located in the State of Texas.[18]

Soloderma sells products indirectly through Amazon.com on the Amazon.com Storefront under the name "VestaOnline," which was previously known as "Skin101Select" (hereinafter the "Soloderma Storefront").[19]

Soloderma does not personally control the content that is contained on Amazon.com for the Soloderma Storefront.[20] Soloderma simply delivers to Amazon.com the products that Soloderma desires to sell, and Amazon.com lists the products on its website for sale.[21] Soloderma does not provide Amazon.com with photographs or other marketing materials for any products that it sells.[22] All of the products Soloderma provides to Amazon.com for sale are delivered to Amazon.com at its warehouse located in California.[23] The Soloderma Storefront is not specifically directed or marketed to individuals located in any particular state, including Texas.[24]

When a product that Soloderma sells through Amazon.com on the Soloderma Storefront is sold, Soloderma receives the funds from the sale through Amazon.com.[25] The product sold is

[15] Id. at ¶ 6 (App. 002).
[16] Id.
[17] Id. at ¶ 7 (App. 002).
[18] Id.
[19] Id. at ¶ 8 (App. 002).
[20] Id. at ¶ 9 (App. 002).
[21] Id.
[22] Id.
[23] Id. (App. 003).
[24] Id. at ¶ 10 (App. 003).
[25] Id. at ¶ 11 (App. 003).

delivered directly from Amazon.com in California to the purchaser wherever the purchaser happens to be located.[26] Soloderma is not provided with the name or address of the purchaser for any products it sells on Amazon.com.[27]

As a result, to Soloderma's knowledge, it has not indirectly sold any products, including any Mary Kay products, on Amazon.com, through the Soloderma Storefront or otherwise, to any individuals located in the State of Texas.[28]

Montoya and Lobato are married and are residents of the State of California.[29] Montoya and Lobato do not maintain a place of business, office or telephone number in Texas and have no employees, servants or agents within the state of Texas.[30] Montoya and Lobato do not perform any operations in Texas.[31] Montoya and Lobato do not own, lease or rent any real or personal property located in Texas.[32] Montoya and Lobato do not maintain any type of bank or securities account in Texas.[33] Montoya and Lobato do not pay taxes in Texas.[34] Montoya and Lobato do not advertise or market in Texas.[35]

Montoya and Lobato have not physically performed any acts in Texas purposefully directed toward Texas or Texas residents.[36] Montoya and Lobato do not engage and have not engaged in business in Texas and have not committed any tort within the state of Texas or

---

[26] Id.
[27] Id.
[28] Id. at ¶ 12 (App. 003).
[29] Id. at ¶ 13 (App. 003); Declaration of Martin Lobato, attached hereto as Exhibit B, at ¶ 2 (App. 005).
[30] Exhibit A, ¶ 14 (App. 003); Exhibit B, ¶ 3 (App. 005).
[31] Id.
[32] Id.
[33] Id.
[34] Id.
[35] Id.
[36] Exhibit A, ¶ 15 (App. 003); Exhibit B, ¶ 4 (App. 006).

elsewhere.[37] Montoya and Lobato's records are all located at their residence or office in California.[38]

Montoya has not personally marketed any products for sale, including any Mary Kay products, in the State of Texas.[39] Montoya has not personally sold any products, including any Mary Kay products, to an individual or entity located in the State of Texas.[40] Montoya has not personally sold any products, including any Mary Kay products, indirectly through Amazon.com in the State of Texas or elsewhere.[41]

Lobato has never directly marketed any products for sale, including any Mary Kay products, in the State of Texas.[42] Lobato has never directly sold any products, including any Mary Kay products, to an individual or entity located in the State of Texas.[43]

Lobato sells products indirectly through Amazon.com on the Amazon.com Storefront under the name "Jonsu," which was previously known as "sotabol" (hereinafter the "Jonsu Storefront").[44] Lobato does not personally control the content that is contained on Amazon.com for the Jonsu Storefront.[45] Lobato simply delivers to Amazon.com the products that he desires to sell, and Amazon.com lists the products on its website for sale.[46] Lobato does not provide Amazon.com with photographs or other marketing materials for any products that he sells.[47] All of the products Lobato provides to Amazon.com for sale are delivered to Amazon.com at its

[37] Id.
[38] Id.
[39] Exhibit A, ¶ 16 (App. 004).
[40] Id.
[41] Id.
[42] Exhibit B, at ¶ 5 (App. 006).
[43] Id.
[44] Exhibit B, ¶ 6 (App. 006).
[45] Id. at ¶ 7 (App. 007).
[46] Id.
[47] Id.

warehouse located in California.[48] The Jonsu Storefront is not specifically directed or marketed to individuals located in any particular state, including Texas.[49]

When a product that Lobato sells through Amazon.com on the Jonsu Storefront is sold, Lobato receives the funds from the sale through Amazon.com.[50] The product sold is delivered directly from Amazon.com in California to the purchaser wherever the purchaser happens to be located.[51] Lobato is not provided with the name or address of the purchaser for any products he sells on Amazon.com.[52]

As a result, to Lobato's knowledge, he has not indirectly sold any products, including any Mary Kay products, on Amazon.com, through the Jonsu Storefront or otherwise, to any individuals located in the State of Texas.[53]

## III. ARGUMENT & AUTHORITIES

### A) Introduction.

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant. *Mink v. AAAA Development LLC*, 190 F.3d 333, 335 (5th Cir. 1999). In resolving a dispute over personal jurisdiction, the Court may consider the pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). However, the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co*., 253 F.3d 865, 869 (5th Cir. 2001).

---

[48] Id.
[49] Id. at ¶ 8 (App. 006).
[50] Id. at ¶ 9 (App. 006).
[51] Id.
[52] Id. (App. 007).
[53] Id. at ¶ 10 (App. 007).

Additionally, the Court must evaluate Defendants' contacts separately to determine whether personal jurisdiction exists. *Paolino v. Argyll Equities, LLC*, 401 F.Supp.2d 712, 720 (W.D. Tex. 2005), *aff'd*, 211 Fed.Appx. 317 (5th Cir. 2006). Indeed, aggregating defendants into a collective of "defending parties" does not satisfy due process. *See Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) ("The requirements of *International Shoe*. . . however, must be met as to each defendant over whom a state court exercises jurisdiction"). "Contrary to [Plaintiffs'] argument, it is not enough to simply rest on the use of the collective term, 'Defendants,' in the allegations." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed.Appx. 775, 793 (5th Cir. 2007).

However, that is precisely what Mary Kay has done here. Mary Kay has improperly joined Soloderma, Montoya and Lobato together as a collective of "Defendants" with more than 20 other parties, without identifying any minimum contacts with Texas by Soloderma, Montoya or Lobato, individually.[54]

May Kay does not allege specific facts regarding minimum contacts by Soloderma, Montoya and Lobato individually in Texas by which the Court can exercise personal jurisdiction over them. Further, Mary Kay does not even clarify whether it wants the Court to exercise specific or general jurisdiction over Defendants. Thus, Mary Kay has not met its burden of proving a *prima facie* case of personal jurisdiction over Defendants. However, Defendants will address both specific and general jurisdiction and explain why neither exist here.

**B) Summary of Law on Personal Jurisdiction.**

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers jurisdiction; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States

[54] Complaint at ¶ 62 (Dkt. 1).

Constitution. *Mink*, 190 at 335. Because Texas's long-arm statute has been interpreted to extend only to the limits of due process, the Court needs only to determine whether subjecting Defendants to suit in Texas would be consistent with the Fourteenth Amendment's Due Process Clause. *Id*.

In deciding whether personal jurisdiction is consistent with the Due Process Clause, a three-prong test is applied: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). The "purposeful availment" requirement guarantees that the non-resident defendant will not be compelled to defend a suit in a jurisdiction solely on the basis of "random," "fortuitous," or "attenuated" contacts, or the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475. Although not determinative, foreseeability is an important consideration in deciding whether the nonresident has purposefully established 'minimum contacts' with the forum state." *Id*. at 474. In other words, a non-resident defendant's conduct and connection with the forum state must be such that it should reasonably anticipate being compelled to defend a suit there. *Id.*

**C) The Court Does Not Have General Jurisdiction over Defendants.**

A court may assert general jurisdiction over a foreign corporation or individual *only* when its affiliations with the forum state are so constant and pervasive as to render it "essentially at home" there (emphasis added). *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Only a

limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there, such as a corporation's place of incorporation and principal place of business. *Id.* at 137. Thus, "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" will be "so substantial and of such a nature as to render the corporation at home in that State" only in "exceptional" cases. *Id; see also, Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 929 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

The Fifth Circuit has likewise imposed the high standard set by the Supreme Court noting that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Insurance Services, Limited v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)*; see also, Paterson v. Aker Solutions Incorporated*, 826 F.3d 231, 234 (5th Cir. 2016); *Cent. Freight Lines Inc. v. APA Transp. Corp*., 322 F.3d 376, 381 (5th Cir. 2003); *Wilson v. Belin*, 20 F.3d 644, 651 (5th Cir. 1994); *Asarco, Inc. v. Glenara, Ltd*., 912 F.2d 784, 787 (5th Cir. 1990); *Bearry v. Beech Aircraft Corp*., 818 F.2d 370, 373-76 (5th Cir. 1987).

The overwhelming evidence clearly establishes Defendants do not have "affiliations with [the State of Texas that] are so 'continuous and systematic' as to render [them] essentially at home in the [State of Texas]" to justify a finding of general jurisdiction under prevailing case law. *Daimler AG*, 571 U.S. at 139 (*citing Goodyear Dunlop Tires*, 564 U.S. at 919). All of the evidence establishes that Defendants' "home" for general jurisdiction purposes is California.[55]

Accordingly, because Mary Kay cannot meet its burden to establish that Defendants have substantial continuous and systematic affiliations with the State of Texas, the Court cannot exercise general jurisdiction over them.

---

[55] Exhibit A, ¶¶ 2-6, 13-15 (App. 001-003); Exhibit B, ¶¶ 2-5 (App. 005-006).

**D) The Court Does Not Have Specific Jurisdiction over Defendants.**

The inquiry of whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation" (quotation omitted). *Walden v. Fiore,* 571 U.S. 277, 283-84 (2014). Unlike general jurisdiction, specific jurisdiction applies to disputes that arise out of or are connected with the defendant's activities within the state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). Where a defendant purposefully avails itself of the privilege of conducting activities within the forum state relating to the subject matter of the lawsuit, it may invoke the benefits and protections of that state's laws and specific jurisdiction may be found in a suit arising out of or related to those contacts with the forum. *Id*. The forum state's exercise of specific jurisdiction over an out-of-state tortfeasor must, however, be based on intentional conduct by the defendant that creates the necessary contacts with the forum. *Walden*, 571 U.S. at 286. Mere injury to a forum resident is not a sufficient connection to the forum to form a basis for specific jurisdiction. *Id*. at 289-90.

1. <u>Trademark-Related Claims (Count 1-5)</u>.

Mary Kay asserts a number of trademark infringement related claims against Defendants based on its allegation that Defendants have sold products that infringe upon Mary Kay's trademarks.[56] The court does not possess personal jurisdiction over Defendants with respect to these claims.

In the Fifth Circuit, ***foreseeability or awareness*** that an infringing product will reach the forum state's market is a constitutionally sufficient basis for personal jurisdiction ***if*** the defendant's product made its way into the forum state while still in the stream of commerce (emphasis added). *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). There has

[56] Complaint at ¶¶ 298-380 (Dkt. 1).

to be both: evidence that infringing products sold by Defendants actually made their way to Texas, and that Defendants foresaw or were aware that infringing products would find their way to Texas. *Id*.

Here, Mary Kay has not alleged sufficient facts against Soloderma, Montoya or Lobato to lend force to a stream-of-commerce argument because it has not offered evidence that any of them individually sold any infringing products in the State of Texas or, even if such sales were made, that the volume of sales in the State was sufficient to demonstrate foreseeability or awareness.

In fact, the evidence offered in support of this motion establishes the contrary: a complete lack of any foreseeability or awareness on the part of Defendants. With respect to Montoya, she does not personally market or sell products at all, on Amazon.com or otherwise, in the State of Texas.[57] With respect to Soloderma and Lobato, they made no efforts to market any products in the State of Texas, made no direct sales to anyone in Texas, and had no knowledge of any indirect sales of any products, including any Mary Kay products, on Amazon.com in the State of Texas.[58]

Courts that have found specific jurisdiction over defendants under a stream of commerce theory have required evidence of foreseeability or awareness that goes beyond the mere possibility that products sold by a third party – like Amazon – ***might*** end up in the forum state. *See, e.g. Luv N' Care,* 438 F.3d at 471 (finding personal jurisdiction over defendant where it personally filled orders for delivery in the forum state and derived 4.5% of its revenues from sales in the forum state); s*ee also, Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (Finding jurisdiction over defendant who used mark in placing and

---

[57] Exhibit A, ¶ 16 (App. 004).
[58] Exhibit A, ¶¶ 7-12 (App. 002-003); Exhibit B, ¶¶ 6-10 (App. 006-007).

soliciting bids in Texas, attended trade shows in Texas using the protected mark, sold product in Texas using the mark, and advertised their business on an internet website accessible in Texas using the trademarked name).

This is because personal jurisdiction requires more than a mere possibility that forum residents may purchase products on a nonresident defendant's website. *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 594–95 (E.D. La. 2015). Otherwise, a defendant selling products on a platform like Amazon.com would be found to automatically have been subject to personal jurisdiction in all of the 50 States because it is theoretically possible that a buyer from each state ***could*** go on Amazon.com to purchase a product indirectly from Defendants. That is not sufficient and does not comport with Due Process because, as the Supreme Court has made clear, the relationship required for specific personal jurisdiction must arise out of contacts that the ***defendant himself creates with the forum State*** (emphasis added). *Walden,* 571 U.S. 284.

Mary Kay does globally allege – in conclusory fashion – that *all* of the more than 20 defendants sued here advertise and sell infringing products to Texas residents through websites.[59] But, as referenced above, Mary Kay is required to offer a prima facie case of personal jurisdiction over *each* defendant; roping more than 20 parties together as a collective group does not satisfy due process. *Rush*, 444 U.S. at 331-32.

Therefore, to support the assertion of personal jurisdiction over these specific Defendants, Mary Kay must offer evidence, not conclusory allegations, that: (1) Texas residents have actually gone to the Soloderma Storefront or the Jonsu Storefront on Amazon.com and purchased products that ended up in Texas; and (2) that Defendants specifically aimed or directed their advertising or sales toward Texas. *See Shippitsa Ltd. v. Slack,* No. 3:18-CV-1036-

[59] Complaint at ¶ 62 (Dkt. 1).

D, 2019 WL 277613, at *5 (N.D. Tex. Jan. 22, 2019), *reconsideration denied*, No. 3:18-CV-1036-D, 2019 WL 2372687 (N.D. Tex. June 5, 2019). Absent same, personal jurisdiction is improper. *See id; see, also, Springboards to Educ., Inc. v. Hamilton Cty. Read 20*, No. 3:16-CV-2509-B, 2017 WL 3023489, at *4 (N.D. Tex. July 14, 2017) (Holding the conclusory allegations that mention some sales and the *potential* of sales in Texas were insufficient to establish minimum contacts in the absence of any allegation of a connection to Defendant's website or identification of any *actual* sales by Defendant to Texas residents (emphasis in original)); *Autoflex Leasing-Dallas I, LLC v. Autoflex LLC*, No. 3:16-CV-2589-D, 2017 WL 713667, at *5 (N.D. Tex. Feb. 23, 2017) (Finding no personal jurisdiction where there is nothing more than conclusory allegations that defendant maintains a commercial presence in Texas through its website based on the hypothetical possibility of sales in the forum); *Monistere v. Losauro,* No. CIV.A. 13-22, 2013 WL 6383886, at *7 (E.D. La. Dec. 4, 2013) ("[T]he Court agrees ... that personal jurisdiction may not be established by the mere *possibility* that Louisiana residents may purchase products on Defendants' website[.]"); *Interactive Life Forms, LLC v. Weng*, 2013 WL 12116148, at *5 (W.D. Tex. Apr. 8, 2013) ("Defendants appear to have *not* accepted customers from Texas, and *not* shipped products to Texas."); *Applied Food Scis., Inc. v. New Star 21, Inc.*, No. CIV.A. W-07-CA-359, 2009 WL 9120113, at *4 (W.D. Tex. Jan. 23, 2009) ("[W]here those corporations are not alleged to have conducted electronic commerce with anyone in Texas, not alleged to have directed any of their advertising or Internet activities specifically towards Texas, and not alleged to have sold any infringing products to individuals in Texas, the maintenance of personal jurisdiction over Defendants would be unreasonable."); *Monkey Boy Graphix, Inc. v. Anton Sport, Inc.*, 2008 WL 11349966, at *7 (N.D. Tex. Aug. 20, 2008) (Ramirez, J.) ("There is no evidence of any sales of the allegedly infringing images to Texas residents, nor is there any

evidence that the Corporate Defendants have been interacting with anyone in Texas through [their] website."), *rec. adopted*, 2008 WL 11349845, at *1 (N.D. Tex. Sept. 17, 2008) (O'Connor, J.); *People Sols., Inc. v. People Sols., Inc.*, 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000) (Lindsay, J.) ("Although Defendant appears to have the potential to interact with, sell products to, and contract with Texas residents on its web site, the evidence does not support a finding that this level of activity has taken place."); *Origin Instruments Corp. v. Adaptive Comput. Sys., Inc.*, 1999 WL 76794, at *4 (N.D. Tex. Feb. 3, 1999) (Lindsay, J.) ("[T]here is no evidence in the record to establish that Defendant has been interacting with anyone in Texas through its web site."). Mary Kay fails to do so.

Additionally, Mary Kay cannot establish personal jurisdiction over Defendants merely because it has allegedly felt the "effects" of the injury from allegedly infringing sales in Texas since that is where it is headquartered.[60]

In determining whether the "effects" of the defendant's intentional acts support specific jurisdiction, the Fifth Circuit has repeatedly held that "effects" jurisdiction is <u>rare</u> (emphasis added). *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008). The "effects" test under the Supreme Court case of *Calder v. Jones*, 465 U.S. 783 (1984) "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Panda Brandywine*, 253 F.3d at 869 (*quoting Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998)). "[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." *Id.* A plaintiff's allegations, even if true, only relate to the foreseeability of causing injury in Texas, which is not a "sufficient benchmark" for specific

[60] Complaint at ¶ 62 (Dkt. 1).

jurisdiction. *Id.*; s*ee also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."). The "foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id*. (*quoting Burger King*, 471 U.S. at 474). A conclusion that a defendant should "reasonably anticipate" being haled into the forum State requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," or "purposefully directs" its efforts toward the forum State residents. *Id*. (*quoting Burger King*, 471 U.S. at 475-76).

As such, the Fifth Circuit has consistently and expressly declined to allow jurisdiction where the only jurisdictional basis is the alleged harm to a Texas resident. *Panda Brandywine*, 253 F.3d at 870; *Moncrief Oil,* 481 F.3d at 314; *Stroman Realty,* 513 F.3d at 486.

Indeed, the Supreme Court has twice recently clarified *Calder* and held that mere injury to a forum resident is not a sufficient connection to the forum; rather, regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. *Walden*, 571 U.S. at 290; s*ee also, Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,* 137 S. Ct. 1773, 1781 (2017). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden,* 571 U.S. at 290.

That Mary Kay allegedly suffered harm in Texas is not a substitute for Defendants' minimum contacts that demonstrate purposeful availment of the benefits of the State. Mary Kay does not establish any acts by which Defendants purposefully availed themselves of the benefits

of conducting activities in Texas. To the contrary, the evidence before the Court indicates Defendants have not engaged in any specific act aimed toward Texas whatsoever. Defendants cannot purposefully avail themselves of "some forum someplace;" due process requires that Defendants' conduct and connection with Texas are such that they should reasonably anticipate being haled into court there. *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002). Such is lacking here.

Accordingly, the Court cannot exercise specific jurisdiction over Defendants with respect to Mary Kay's trademark-related claims, Count Nos. 1-5.

2. Tortious Interference With Contract Claim (Count 6).

Mary Kay also asserts a claim against Defendants for tortious interference with contract. The genesis of the claim is Mary Kay's allegation that it has contracts with its consultants which prohibit the consultants from selling its products to re-sellers, Defendants have purchased products from Mary Kay consultants that Defendants in turn re-sell, and therefore, Defendants have induced the consultants to breach their contracts with Mary Kay.[61] The court does not possess personal jurisdiction over Defendants with respect to this claim.

For the same reasons identified above, the Court cannot exercise specific jurisdiction over Defendants with respect to Mary Kay's tortious interference with contract claim solely because Mary Kay may have felt the "effects" of the alleged tortious interference in Texas. *Walden*, 571 U.S. at 290; *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

Mary Kay does not allege, nor does it offer any evidence, that Defendants targeted consultants located in Texas or purchased products from consultants located in Texas, nor does Mary Kay allege any other purposeful act by Defendants aimed at Texas with respect to this claim. Taking Mary Kay's allegations as true, the alleged tortious conduct by Defendants of

[61] Complaint at ¶¶ 381-393 (Dkt. 1).

purchasing Mary Kay products from consultants and then re-selling the products necessarily took place in California where Defendants are located, not Texas.

In similar cases, the Texas Supreme Court has declined to find personal jurisdiction over defendants with respect to tortious interference with contract claims where the alleged tortious conduct took place outside of the forum state and the alleged tortfeasor did not specifically seek out a contracting party in Texas. *See, e.g., Moncrief Oil Intern.* 414 S.W.3d at 157 (holding that defendants' alleged tortious conduct in California against a Texas resident is insufficient to confer specific jurisdiction over them as to plaintiff's tortious interference claims); s*ee also, Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 73 (Tex. 2016) (holding that court lacked personal jurisdiction over defendant even though it knew the contracting party had operations in Texas, it did not specifically seek out a Texas seller or Texas assets, or seek to launch or maintain operations in Texas).

Likewise, the Court should decline to find personal jurisdiction over Defendants with respect to Mary Kay's tortious interference with contract claim.

3. <u>Breach of Contract Claim (Count 7)</u>.

Finally, Mary Kay has asserted a breach of contract claim against Montoya and Lobato, who allegedly were previously under consulting contracts with Mary Kay.[62] Mary Kay pled that the contracts were terminated, but that even after termination, Montoya and Lobato remained bound to the terms of the contracts that prohibited them from re-selling Mary Kay products online, which Montoya and Lobato allegedly breached.[63]

But even if Montoya and Lobato, on the one hand, and Mary Kay, on the other, had previously entered into a consulting contract, that contract cannot give rise to personal

[62] Complaint at ¶ 395 (Dkt. 1). There has been no allegation that Soloderma entered into or breached a contract with Mary Kay.
[63] Id. at ¶¶ 396-399.

jurisdiction in Texas. No matter the terms of such a contract,[64] Montoya's and Lobato's performance under that contract would have to occur entirely in California, where they live and work. This would not establish minimum contacts with the state of Texas.

The Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts." *Jones v. Petty-Ray Geophysical Geosource*, 954 F.2d 1061, 1068 (5th Cir. 1992); *see also SMK Painting Co. v. Flournoy Constr. Co.*, LLC, No. Civ. A. 3:99-CV-0916-G, 1999 WL 1017779, at *4 (N.D. Tex. Nov. 4, 1999) ("The Fifth Circuit has held that negotiating, executing, and even partially performing an isolated contract with a resident of the forum will not, without more, constitute the minimum contacts necessary to confer jurisdiction.") True enough, such a contract would be connected to Texas in the sense that Mary Kay happened to be in Texas when it entered into the agreement, but "merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil*, 481 F.3d at 311; *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).

Therefore, even if Mary Kay could establish that Montoya and Lobato had entered into contracts with it and could establish that they had sold products online in violation of the contracts, Mary Kay would have to establish more to establish personal jurisdiction over them with respect to the breach of contract claim, such as sales by Montoya or Lobato to residents in Texas or their receipt of monies from Texas resident resulting from such allegedly breaching sales. Mary Kay has not and cannot do so.

Therefore, personal jurisdiction is not proper with respect to Mary Kay's breach of contract claim.

---

[64] Mary Kay does not attach the purported contracts to its Complaint.

4. Montoya Cannot Be Liable in Her Personal Capacity for Any Alleged Infringing or Tortious Behavior By Soloderma.

In the alternative, even if the Court rejects the above reasoning and finds it possesses personal jurisdiction over Soloderma with respect to the trademark infringement and tortious interference with contract claims, Montoya cannot be subject to personal jurisdiction in Texas for the following additional grounds.

Under the fiduciary shield doctrine, an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). It is true that the doctrine does not apply if the corporation is the alter ego of the individual. *Id*. at 1197. Nor does the doctrine apply to corporate officers who, in their roles as corporate agents, injure persons by tortious activity even if such acts were performed within the scope of their employment as corporate officers. *Id*. (citation omitted).

Here, Mary Kay has not established that Montoya is the alter ego of Soloderma; nor has it established that Montoya engaged in any tortious behavior against Mary Kay in her individual capacity. Indeed, Mary Kay is required to put forth some evidence proving alter ego in order for personal jurisdiction to exist over Montoya. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002); *See also Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978), *cert. denied*, 441 U.S. 906 (1979). Mary Kay has not and cannot prove that Montoya is the alter ego of Soloderma.

Mary Kay relies solely on broad, conclusory allegations to support its claim that Montoya is the alter ego of Soloderma.[65] However, bare allegations without factual support do not suffice to establish minimum contacts for personal jurisdiction purposes. *Fernandez-Montes v. Allied*

[65] Complaint at ¶ 40 (Dkt. 1).

*Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). In fact, the Fifth Circuit and this Court have regularly dismissed claims against individual officers, directors, shareholders or agents of corporations for lack of personal jurisdiction pursuant to the fiduciary shield doctrine despite a plaintiff's attempt to circumvent the doctrine by pleading tortious acts against the individual. *See, e.g., American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed.Appx. 662, 666 (5th Cir. 2004) (Holding that principal of company lacked sufficient minimum contacts with Texas to subject him to personal jurisdiction there despite plaintiff's conclusory allegation that he and the company conspired to commit fraud); *Dynamo v. Warehouse of Vending & Games*, 168 F.Supp.2d 616, 620 (N.D. Tex. 2001) (Dismissing plaintiff's fraud and contract claims against individual defendants for lack of personal jurisdiction because defendants are protected by the fiduciary shield doctrine and plaintiff has not alleged any basis for disregarding that doctrine); *Admiral Ins. Co., Inc. v. Briggs*, No. CIV.A.302CV0310P, 2002 WL 1461911 at *5-6 (N.D. Tex. Jul 02, 2002) (Solis, J.) (Holding that fiduciary shield doctrine precluded use of alter ego theory to exercise personal jurisdiction over individual defendant absent prima facie showing that defendant is an alter ego of corporation of which he was a director); *Organic Metals v. Aquasium Techs., Ltd.*, No. CIV.A.303CV3062H, 2004 WL 718960 at *4 (N.D. Tex. Apr. 2, 2004) (Sanders, J.) (Dismissing plaintiff's claims against individual officers and directors of corporation for lack of personal jurisdiction under fiduciary shield doctrine because plaintiffs did not put forth evidence to support any fraud exception to the doctrine); *Rogue v. Bank One, N.A.*, No. 4:02-CV-868-A, 2002 WL 31875609 at *3 (N.D. Tex. Dec. 16, 2002) (McBryde, J.) (Finding that fiduciary shield doctrine prohibited finding of personal jurisdiction over corporate officer where plaintiff produced no evidence to support a finding of alter ego or personal fraud); *Brothers v. Print, Inc.*, No. CIVA 3:07-CV-0415-B, 2007 WL 3331974 at *8-9 (N.D. Tex. Nov

08, 2007) (Boyle, J.) (Holding that fiduciary shield doctrine precluded finding of personal jurisdiction over chief executive officer of corporation where plaintiff failed to show executive made false representations in personal capacity and that an exception to the fiduciary shield doctrine applies); *Meyer v. Mendelson*, No. CIV.A.3:05-CV-1344-M, 2006 WL 66707 at *3 (N.D. Tex. Jan 11, 2006) (Lynn, J.) (Holding that plaintiffs did not set forth specific facts or uncontroverted allegations that would serve to eliminate individual defendant's fiduciary shield); *Zubarik v. Rubloff Development Group, Inc*., No. CIV. 3:05-CV-1491-H, 2006 WL 842368 at *2 (N.D. Tex. Mar 31, 2006) (Sanders, J.) (Dismissing claims against individual agent of corporation under fiduciary shield doctrine where plaintiff failed to provide supporting evidence that an exception to the doctrine applied).

In conclusion, the alter ego doctrine, like all variations of the piercing the corporate veil doctrine, is reserved for exceptional cases. *Bridas S.A.P.I.C. v. Government of Turkmenistan ("Bridas II")*, 447 F.3d 411, 416 (5th Cir.), *cert. denied*, 127 S.Ct. 664 (2006). Due to the severe due process implications of haling Montoya into court in Texas, a state in which she does not have minimum contacts, Mary Kay must provide explicit, factual evidence to justify designating this an "exceptional" case, such that piercing the corporate veil and finding jurisdiction over Montoya would be proper. Since Mary Kay does nothing more than rope Montoya and Soloderma together as the alter egos of one another, Mary Kay cannot establish an exception to the fiduciary shield doctrine applies. Accordingly, the fiduciary shield doctrine prevents the Court from exercising personal jurisdiction over Montoya.

**F) An Exercise of Personal Jurisdiction Over Defendants Would Not Comport with "Traditional Notions of Fair Play and Substantial Justice."**

Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show the assertion of jurisdiction is unfair

and unreasonable. *Cent. Freight Lines*, 322 F.3d at 384. As Defendants have shown, Mary Kay does not establish minimum contacts between Defendants and Texas. Thus, the burden remains with Mary Kay.

Furthermore, traditional notions of fair play and substantial justice weigh heavily against the Court's exercise of personal jurisdiction over Defendants. The evidence before the Court reveals that exercising jurisdiction over Defendants would offend the traditional notions of fair play and substantial justice and would therefore violate the due process clause of the Fourteenth Amendment of the United States Constitution. *Burger King*, 471 U.S. at 475-476. In deciding whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, the Court should consider the following factors: (1) the burden on Defendants; (2) the interest of Texas in adjudicating the dispute; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id*. at 477.

None of the above factors weigh in favor of the Court exercising personal jurisdiction over Defendants. The inequities of haling Defendants into this Court are self-evident. Defendants reside in California. Defendants do not conduct any of their business operations in Texas. Defendants' records are all located in California. All of Defendants' employees are located in California. The burden upon Defendants to litigate this action in Texas would be substantial.

Thus, even if the Court finds Defendants have sufficient contacts with Texas, which Defendants deny, the Court's exercise of personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice.

## IV. CONCLUSION

The ultimate inquiry in the Court's personal jurisdiction analysis is: (1) whether Defendants purposely directed their activities toward Texas or purposely availed themselves of the privileges of conducting activities in Texas; (2) whether Mary Kay's cause of action arises out of or results from Defendants' forum-related contacts; and (3) whether the Court's exercise of personal jurisdiction over Defendants is fair and reasonable. *See Nuovo Pignone*, 310 F.3d at 378. Mary Kay does not show Defendants purposefully directed any activities toward Texas or purposefully availed themselves of the privileges of conducting activities in Texas. Mary Kay does not show its cause of action arose from Defendants' contacts with Texas. And, Mary Kay does not show the Court's exercise of personal jurisdiction over Defendants would be fair and reasonable.

Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) must be granted.

## V. PRAYER

Defendants respectfully pray that the Court grants their motion to dismiss for lack of personal jurisdiction, enters an order dismissing Plaintiff's claims against Defendants, and for such other relief to which Defendants may show themselves justly entitled.

Respectfully submitted,

By: *<u>/s/ Eric C. Wood</u>*
Eric C. Wood
State Bar No. 24037737
eric@brownfoxlaw.com
Cortney C. Thomas
State Bar No. 24075153
cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Phone: (214) 327-5000
Fax: (214) 327-5001

ATTORNEYS FOR DEFENDANTS
SOLODERMA, LLC, ANYELLY
MONTOYA AND MARTIN LOBATO

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this Report is being filed with the Court's electronic-filing system on February 14, 2020.

*/s/ Eric C. Wood*
Eric C. Wood