**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MARY KAY INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO: 3:19-cv-03027-D |
| | § | |
| KARIN JORDAN AGUDELO, TED MORENO, MARIA CAMILA OLIVEROS-JORDAN, ALEJANDRO OLIVEROS-JORDAN, DAVID OLIVEROS-JORDAN MILTON MORENO GARZON, ADOLFO NARANJO, JUAN GABRIEL NEIRA JIMENEZ, HILDA MORENO, LAURA GOMEZ, NOE GOMEZ, JENNIFER STEPHANIE MARTINEZ FLORES, ANYELLY MONTOYA, FERNANDO JAVIER FIGUEROA, YAMIL FIGUEROA LOBATO, NORMA BEATRIZ ARATA, MARTIN LOBATO, and JOHN DOES 1-50, natural persons, and EASY FAST, INC., CALIFORNIA LA FASHION, INC., ALL SELLER INC., ALLPRODUCTS CORP., SMILE DISTRIBUTION, INC., SOLODERMA LLC, OCEAN ONE INVESTMENTS PRO, LLC, and JOHN DOES 51-100, business entities, | § | Judge Sidney A. Fitzwater |
| | § | |
| Defendants. | § | |

---

**PLAINTIFF MARY KAY INC.'S OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION BY DEFENDANTS SOLODERMA LLC, ANYELLY MONTOYA, AND MARTIN LOBATO**

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. Relevant Allegations in Mary Kay's Complaint ........ 2

B. Additional Facts ........ 6

1. Interactivity of the Amazon Website and Defendants' Ability to View Their Customers' Shipping Addresses ........ 6

2. Defendants' Sales Volume and Offering of Products to Texas Residents ........ 9

3. Forum Selection Clause in Defendants' Contracts with Mary Kay ........ 9

4. Corporate Documents of Soloderma LLC ........ 10

III. LAW AND ARGUMENT ........ 10

A. This Court Has Specific Personal Jurisdiction Over Defendants On Mary Kay's Trademark-Related Claims ........ 10

1. Legal Standards ........ 10

2. Defendants Have Established Sufficient "Minimum Contacts" With Texas By Selling Infringing Products Bearing Mary Kay's Trademarks Into Texas Through Their Amazon Storefronts ........ 12

3. Defendants Have Not Shown That The Exercise of Jurisdiction Would Offend Traditional Notions of Fair Play and Substantial Justice ........ 18

4. Mary Kay Properly Pleaded Its Trademark-Related Claims Against Montoya In Both Her Individual Capacity and her Capacity as a Corporate Officer of Soloderma LLC ........ 19

B. This Court Has Specific Personal Jurisdiction Over Defendants On Mary Kay's Remaining Claims for Breach of Contract and Tortious Interference ........ 22

1. This Court Has Pendent Personal Jurisdiction Over Defendants on Mary Kay's Remaining Claims ........................................ 22

2. There is an Independent Basis for this Court to Exercise Personal Jurisdiction Over Defendants on Mary Kay's Remaining Claims ........................................ 23

IV. CONCLUSION ........................................ 25

CERTIFICATE OF SERVICE ........................................ 26

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allstar Mktg Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109 (C.D. Cal. 2009) .......... 13, 16

*American Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895 (N.D. Tex. 2000) .......... 12, 14

*Archer & White, Inc. v. Tishler*, No. 3:03-CV-0742-D, 2003 U.S. Dist. LEXIS 19010 (N.D. Tex. Oct. 23, 2003) .......... 11

*AutoOpt Networks, Inc. v. GTL USA, Inc.*, No. 3:14-CV-1252-D, 2015 U.S. Dist. LEXIS 11306 (N.D. Tex. Jan. 30, 2015) .......... 24

*Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161 (11th Cir. 1994) .......... 20

*Bose Corp. v. Neher*, No. 09-11479-PBS, 2010 U.S. Dist. LEXIS 143644 (D. Mass. July 13, 2010), *adopted by Bose Corp. v. Neher*, No. 09-11479, 2010 U.S. Dist. LEXIS 144028 (D. Mass. July 30, 2010) .......... 13, 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .......... 19

*Canyon Furniture Co. v. Sanchez*, No. SA-18-cv-00753-OLG, 2018 U.S. Dist. LEXIS 224455 (W.D. Tex. Nov. 8, 2018) .......... 22

*Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003) .......... 18

*Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (11th Cir. 1991) .......... 20

*Dedvukaj v. Maloney*, 447 F. Supp. 2d 813 (E.D. Mich. 2006) .......... 14

*Imation Corp. v. Sanho Corp.*, 2016 U.S. Dist. LEXIS 103626 (D. Minn. Aug. 5, 2016) .......... 13, 14, 17

*Jack Preston Wood: Design, Inc. v. B L Bldg. Co.*, No. H-03-713, 2004 U.S. Dist. LEXIS 30511 (S.D. Tex. June 22, 2004) .......... 21

*John Crane Prod. Solutions, Inc. v. R2R & D, LLC*, No. 3:11-CV-3237-D, 2012 U.S. Dist. LEXIS 63164 (N.D. Tex. May 4, 2012) .......... 20, 21

*Latshaw v. Johnston*, 167 F.3d 208 (5th Cir. 1999) .......... 11

*Leach v. Pharmedoc Inc.*, No. CIV-16-1034-M, 2017 U.S. Dist. LEXIS 33565 (W.D. Okla. Mar. 9, 2017) .......... 13, 14, 15, 16

*Mary Kay Inc. v. Weber*, 601 F. Supp. 2d 839 (N.D. Tex. 2009) ... 24

*Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879 (Fed. Cir. 2017) ... 6, 7, 8, 9

*Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999) ... 10, 11, 12

*Mitsui & Co. v. Mira M/V*, 111 F.3d 33 (5th Cir. 1997) ... 23

*Mullins v. TestAmerica Inc.*, 564 F.3d 386 (5th Cir. 2009) ... 24

*Otter Prods. v. Cloudseller, LLC*, No. 19-cv-00630-JLK, 2019 U.S. Dist. LEXIS 224515 (D. Colo. Dec. 3, 2019) ... 13, 15, 16

*Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC*, 186 F. Supp. 2d 1158 (D. Kan. 2002) ... 19

*Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765 (N.D. Tex. 2008) ... 22

*Salu, Inc. v. Original Skin Store*, No. CIV. S-08-1035 FCD/KJM, 2008 U.S. Dist. LEXIS 73225 (E.D. Cal. Aug. 13, 2008) ... 14, 19

*Shippitsa Ltd. v. Slack*, No. 3:18-CV-1036-D, 2019 U.S. Dist. LEXIS 121994 (N.D. Tex. July 23, 2019) ... passim

*Shippitsa Ltd. v. Slack*, No. 3:18-CV-1036-D, 2019 U.S. Dist. LEXIS 9602 (N.D. Tex. Jan. 22, 2019) ... 12

*Springboards to Educ., Inc. v. Hamilton Cty. Read 20*, No. 3:16-CV-2509-B, 2017 U.S. Dist. LEXIS 109999 (N.D. Tex. July 14, 2017) ... 12

*Std. Process, Inc. v. Antitrend LLC*, 19-cv-99-jdb, 2020 U.S. Dist. LEXIS 17386 (W.D. Wis. Feb. 4, 2020) ... 13, 14, 16, 17

*Std. Process, Inc. v. KDealz Ltd. Co.*, No. 17-cv-909-jdp, 2018 U.S. Dist. LEXIS 102976 (E.D. Wis. June 20, 2018) ... 15

*Stomp, Inc. v. Neato*, 61 F. Supp. 2d 104 (C.D. Cal. 1999) ... 14

*Taylor Made Golf Co. v. MUT Consulting Group*, 265 F. Supp. 2d 723 (N.D. Tex. 2003) ... 20

*TeleBrands Corp. v. Mopnado*, No. 2:14-07969, 2016 U.S. Dist. LEXIS 10671 (D.N.J. Jan. 12, 2016) ... 15

*Tempur-Pedic Int'l, Inc. v. GO Satellite Inc.*, 758 F. Supp. 2d 366 (N.D. Tex. 2010) ... passim

*Valtech Solutions, Inc. v. Davenport*, No. 3:15-CV-3361-D, 2016 U.S. Dist. LEXIS 67139 (N.D. Tex. May 23, 2016) ... 17

*Valtech, LLC v. 18th Ave. Toys, Ltd.*, No. 14 C 134, 2015 U.S. Dist. LEXIS 17138 (N.D. Ill. Feb. 12, 2015) .......... 13

*Wellnext LLC v. OVM LLC*, No. 17-CV-62107, 2017 U.S. Dist. LEXIS 218128 (S.D. Fla. Feb. 16, 2017) .......... 20

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) .......... 19

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) ....... 11, 14

**STATUTES**

15 U.S.C. §1125 .......... 5

## I. INTRODUCTION

Analysis of personal jurisdiction in this case is straightforward. Plaintiff Mary Kay Inc. ("Mary Kay") alleged that this Court has specific personal jurisdiction over Defendants Soloderma LLC, Anyelly Montoya ("Montoya"), and Martin Lobato ("Lobato") (collectively referenced hereinafter as "Defendants") because they have sold infringing products bearing Mary Kay's trademarks to consumers in Texas through the highly interactive website www.amazon.com ("Amazon"). There is no dispute that all of Mary Kay's federal claims arise from these sales. When presented with analogous facts, federal courts in Texas and across the country have held that online seller defendants are subject to personal jurisdiction even when their sales are minimal and occurred through websites that did not specifically "target" the forum state.

Defendants' entire motion rests on their contention that no evidence of their ***actual sales*** into Texas have yet been presented to this Court, and personal jurisdiction must be based on "*actual* Internet sales to forum residents, not the mere possibility of sales." Defendants, however, have misled this Court by testifying that they are "not provided with the name or address" of consumers who purchased from them on Amazon. As can be seen in Exhibit B to the supporting Declaration of Christopher J. Schwegmann ("Schwegmann Decl."), and as Mary Kay discusses more fully below, all third-party sellers on Amazon (including Defendants) can see their customers' shipping addresses by downloading a report from their "Seller Central" account on Amazon. Thus, it is simply untrue that Defendants "don't know" whether they have sold Mary Kay products to consumers in Texas, and Defendants have accordingly failed to controvert Mary Kay's allegation that they ***have*** sold products into Texas despite having access to their sales records that would allow them to controvert Mary Kay's allegation (if they could). As a result,

Mary Kay's allegation must be accepted as true, and Defendants' sales into Texas subject them to jurisdiction.[1]

This Court has personal jurisdiction over Defendants on Mary Kay's remaining claims—for breach of contract and tortious interference with existing contracts—under the doctrine of pendent personal jurisdiction because Mary Kay's state law claims arise out of the same nucleus of operative fact as its federal claims. And even if this Court concludes that it cannot exercise pendent personal jurisdiction over Mary Kay's state law claims, there is an independent basis for personal jurisdiction for each claim because: (1) the contracts that Lobato and Montoya entered into with Mary Kay include a forum-selection clause in which the parties agreed that Texas courts will have jurisdiction over any dispute relating to the contract; and (2) Mary Kay's tortious interference claim arises from Defendants' contacts with Texas: their contracts with Mary Kay and their sales into Texas. Defendants' motion should be denied.

## II. FACTUAL BACKGROUND[2]

### A. Relevant Allegations in Mary Kay's Complaint

Mary Kay is a global manufacturer and wholesale distributor of cosmetics, skin care products, toiletries, and related products that it sells under numerous trademarks it has registered

[1] If Defendants do not controvert Mary Kay's allegation in their reply brief but this Court concludes that Mary Kay's allegation must nonetheless be supported with evidence of actual sales, Mary Kay requests leave to obtain Defendants' sales records through jurisdictional discovery. As discussed below, it is virtually certain that Defendants have sold Mary Kay products into Texas because they have sold a high volume of Mary Kay products through their Amazon storefronts (to consumers throughout the country). If Defendants do not voluntarily submit their sales records, however, Mary Kay cannot itself show specific sales into Texas without jurisdictional discovery because only Defendants and Amazon.com, Inc. have access to Defendants' sales data.

[2] When a court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, all non-conclusory allegations in the complaint must be accepted as true if they are not controverted by evidence from the movant. *Shippitsa Ltd. v. Slack*, No. 3:18-CV-1036-D, 2019 U.S. Dist. LEXIS 121994, at *8 (N.D. Tex. July 23, 2019). Any factual disputes in submitted evidence must be resolved in favor of the plaintiff. *Id.* In addition, the court is not limited to "the facts pleaded in the complaint" and may consider outside evidence such as affidavits and documents. *Id.* at *8-9.

with the United States Patent and Trademark Office. (ECF 1, Complaint, at ¶¶ 64, 68-71.) Mary Kay uses a direct-sales business model to sell its products that is designed to ensure that consumers only receive products that meet Mary Kay's high quality standards. (*Id.* at ¶ 65.) Through this model, Mary Kay products are sold to the public exclusively through Mary Kay Independent Beauty Consultants ("Consultants"), who must enter into contracts with Mary Kay to be able to sell Mary Kay products. (*Id.*)

Through its contracts, Mary Kay requires Consultants to provide customer services and exercise various quality controls over Mary Kay products, including requirements relating to product storage, handling, inspection, and providing consultation and guidance on the safe and proper use of Mary Kay products. (*Id.* at ¶ 67, 124-127.) Mary Kay's contracts also authorize Consultants to sell products only in certain channels and prohibit Consultants from selling or facilitating the sale of Mary Kay products on the Internet, including online marketplaces such as Amazon and www.ebay.com ("eBay"). (*Id.* at ¶¶ 67, 121-122.) Further, Mary Kay permits Consultants to sell products only to end-user consumers and prohibits Consultants from selling products to resellers, to ensure that Mary Kay products are sold to consumers only by Consultants who follow Mary Kay's quality controls and over whom Mary Kay can exercise quality control. (*Id.* at ¶ 128.) Mary Kay provides a complete money back satisfaction guarantee (the "Satisfaction Guarantee") to consumers who purchase Mary Kay products from Consultants, but it does not extend the Satisfaction Guarantee to products sold by unauthorized sellers (*i.e.*, non-Consultants) because Mary Kay has no ability to oversee or ensure the quality of its products sold by unauthorized sellers. (*Id.* at ¶¶ 129-130.)

Both Mary Kay and consumers are harmed when non-Consultants resell Mary Kay products to consumers, because non-Consultants are not subject to Mary Kay's quality controls and frequently sell poor-quality products that harm Mary Kay's reputation and may endanger

consumers' safety. (*Id.* at ¶¶ 76-118, 121.) These dangers are particularly heightened when non-Consultants sell on online marketplaces such as Amazon, because consumers often purchase on online marketplaces without realizing that they purchased from an unauthorized seller that is outside the manufacturer's quality controls. (*Id.* at ¶ 83.) Online marketplaces also allow consumers to write product reviews that are heavily relied upon by other consumers, and numerous consumers have left negative reviews of Mary Kay products on Amazon in which they complain of receiving products that were expired, damaged, tampered with, or otherwise different from what was advertised. (*Id.* at ¶¶ 85-118.)

To protect itself and consumers from these harms, Mary Kay monitors listings and sales of Mary Kay products online. (*Id.* at ¶ 131.) Through this monitoring and extensive investigation, Mary Kay discovered that Defendants, along with more than 20 other named defendants, are acting in concert to sell products bearing Mary Kay's trademarks through 11 separate storefronts on Amazon and one storefront on eBay. (*Id.* at ¶¶ 132-253.) Specifically, Mary Kay found that Soloderma LLC and Montoya sold a high volume of products through an Amazon storefront currently called "VestaOnline," and Lobato sold a high volume of products through an Amazon storefront currently called "Jonsu." (*Id.* at ¶¶ 188-197, 229-237, 252.) Both Montoya and Lobato used to be Consultants and entered into contracts with Mary Kay ("Consultant Agreements"). (*Id.* at ¶¶ 236, 249.) Mary Kay terminated Montoya's Consultant Agreement on November 5, 2018 and terminated Lobato's Consultant Agreement on January 31, 2019 after it discovered that both defendants were selling Mary Kay products on Amazon in breach of their contracts with Mary Kay. (*Id.* at ¶¶ 246, 249, 251.) Consumer reviews of Defendants' Amazon storefronts show that Defendants are providing poor customer service and have sold numerous Mary Kay products that are poor quality, previously used, and possibly counterfeit. (*Id.* at ¶¶ 254-273, 276.)

Mary Kay brings claims against Defendants for: (1) trademark infringement, unfair competition, and trademark dilution under the Lanham Act and Texas law (*id.* at ¶¶ 298-380) (collectively, the "Trademark-Related Claims"); (2) breach of contract under Texas law (*id.* at ¶¶ 394-402); and (3) tortious interference with existing contracts under Texas law (*id.* at ¶¶ 381-393). The basis of Mary Kay's Trademark-Related Claims is that Defendants are creating a likelihood of consumer confusion, harming Mary Kay's reputation, and damaging the value of Mary Kay's trademarks by selling poor-quality products that are materially different from genuine products bearing Mary Kay's trademarks and which are not subject to, do not abide by, and interfere with Mary Kay's quality controls that Consultants must follow. (*Id.* at ¶¶ 274-274, 289-380.) Mary Kay's breach of contract claim is based on the facts that Montoya and Lobato's Consultant Agreements: (1) prohibit them from selling Mary Kay products on Internet websites including Amazon; and (2) provide that this prohibition survives the termination of the agreements. (*Id.* at ¶¶ 293-294, 394-402.) Mary Kay's tortious interference claim is based on the facts that: (1) Mary Kay allows its products to be sold to the public only by Consultants; (2) Mary Kay's contracts prohibit Consultants from selling products to persons or entities who resell the products rather than consume them through personal use; (3) Defendants have sold a high volume of Mary Kay products on the Internet and thus must be obtaining their products from Consultants, causing them to breach their contracts with Mary Kay; and (4) Defendants know that Consultants are prohibited from selling products to resellers (such as Defendants) because they used to be Consultants themselves and were aware that Mary Kay's contracts prohibit Consultants from selling to resellers. (*Id.* at ¶¶ 252, 285-292, 381-393.)

Mary Kay alleged that Defendants are subject to personal jurisdiction in this Court because they "have expressly aimed tortious activities toward the State of Texas and established sufficient minimum contacts with Texas by, among other things, advertising and selling infringing products

bearing Mary Kay's trademarks to consumers within Texas through multiple highly interactive commercial websites, through the regular course of business, with the knowledge that Mary Kay is located in Texas and is harmed in Texas as a result of Defendants' sales of infringing products to Texas residents." (*Id.* at ¶ 62, 279.) Mary Kay alleged further that: (1) Defendants know Mary Kay is located in Texas because they used to be Consultants; and (2) its claims "arise out of Defendants' sales of infringing products bearing Mary Kay's trademarks to Texas residents through the regular course of business." (*Id.*) Finally, Mary Kay alleged that Montoya is "primarily responsible for Soloderma LLC and its actions" and "directs, controls, ratifies, participates in, or is the moving force behind the sales of infringing products bearing Mary Kay's trademarks by Soloderma LLC." (*Id.* at ¶¶ 37, 39.) Mary Kay expressly brings claims against Montoya in both her "individual capacity as well as her capacity as a corporate officer of Soloderma LLC." (*Id.* at ¶ 37.)

**B. Additional Facts**

**1. Interactivity of the Amazon Website and Defendants' Ability to View Their Customers' Shipping Addresses**

The Declarations of Anyelly Montoya and Martin Lobato submitted with Defendants' motion misstate how their products are sold on Amazon. The Declarations also falsely state that Defendants are "not provided with the name or address" of consumers who purchased from them on Amazon. (Appendix to Defendants' Motion ("Defs' App.") at 3 ¶11, 6-7 ¶9.)

Amazon is an online marketplace that functions as a virtual store. *See Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 880 (Fed. Cir. 2017). Some products are sold on Amazon by Amazon.com, Inc. ("Amazon.com"), which operates the Amazon website. *Id.* There are also hundreds of thousands of third-party sellers ("3P sellers") that sell products on Amazon. *See id.* When a 3P seller wishes to offer a product for sale on Amazon, the seller

provides information about the product such as a product description, images, and a price. *Id.* Amazon.com then creates a "product-detail page" that displays the information and identifies the 3P seller through a storefront "name" the seller can customize. *See id.* Defendants are 3P sellers on Amazon who sell through storefronts that are currently called "VestaOnline" and "Jonsu." (Defs. App. at 2 ¶8, 6 ¶6.)[3]

When a consumer wishes to purchase a product on Amazon, the user navigates to a product listing page, chooses which seller the user wishes to purchase from (if there are multiple sellers of a product), and then clicks a button that says "Add to Cart." (Appendix to Mary Kay's Opposition ("App.") at 2, Schwegmann Decl., at ¶ 3.) The user then navigates to a "checkout" page, enters a shipping address, form of payment, and delivery option, and then completes the purchase by clicking a button that says "Place your order." (*Id.*) After an order has been placed, customers receive emails with shipping information and can communicate with their seller through a messaging system on the Amazon website. (*Id.*)

When customers purchase products from 3P sellers on Amazon, 3P sellers can either fulfill and ship all orders themselves *or* they can choose to store their products at warehouses operated by Amazon.com and have Amazon.com ship products to consumers once they have been purchased. *See Milo*, 693 F. App'x at 880-81. This second method, which requires 3P sellers to pay Amazon.com an ongoing fee, is called "Fulfillment By Amazon" ("FBA"). *Id.* According to their declarations, Defendants use the FBA service. (Defs' App.at 2-3 ¶9, 6 ¶7.)

---

[3] Defendants have sworn that they do not "personally control the content that is contained on Amazon.com" for their storefronts. (ECF 20 at 6 ¶ 9, 10 ¶ 7.) This is simply not true. Every 3P seller on Amazon can customize various content on their "storefront" page, including text that appears below their storefront name and in tabs that provide information about their shipping, customer support, and return policy. These fields can be seen on the profile pages for Defendants' storefronts, which can be accessed at https://www.amazon.com/sp?seller=A3LF7ALP5P3ZL9 and https://www.amazon.com/sp?seller=A1OIUV94V907FD. (App. 2, Schwegmann Decl. at ¶ 2.)

A 3P seller who uses the FBA service retains ownership of the products it sends to Amazon warehouses until the products are purchased by a consumer. *Milo*, 693 F. App'x at 881. In other words, the seller's products are not "sold" to Amazon.com when they are delivered to an Amazon warehouse. (*See* App. 6-8, Exhibit A to Schwegmann Decl. (Amazon.com's description of the "Fulfillment By Amazon" service: "You sell it, we ship it.").)

3P sellers on Amazon are also always able to see where the products they have sold have been shipped, even when they choose to use the FBA service and do not personally ship their products to end-user consumers. (App. 3, Schwegmann Decl. at ¶ 6.) 3P sellers who use the FBA service can view this information by downloading an "Amazon-Fulfilled Shipments Report" from their "Seller Central" accounts. (*Id.*) The "Amazon-Fulfilled Shipments Report" includes shipping address information for every product a 3P seller has sold to a customer. (*Id.*; *see also* App. 9-17, Exhibit B to Schwegmann Decl. (instructional information provided by Amazon.com about the "Amazon-Fulfilled Shipments Report," accessible at https://sellercentral.amazon.com/gp/ help/external/help.html?itemID=G200453120.)

Accordingly, Defendants' assertions that they are "not provided with the name or address of the purchaser for any products" they sell on Amazon are simply not true. Exhibit B to the Schwegmann Declaration walks through how, with a few keystrokes, Defendants can download the shipping address of every consumer who has a purchased a Mary Kay product from them.

In their declarations, Defendants also attempt to downplay their responsibility for their sales by asserting that have never "directly sold any products" to consumers in Texas, and instead only sell products "indirectly" through their Amazon storefronts. (Defs' App.at 2 ¶¶ 7-8, 6 ¶¶ 5-6.) In reality, and as set forth above, Defendants are directly responsible for *all* sales through their storefronts because every product that Amazon ships to consumers through its "Fulfillment By Amazon" service is a product that **Defendants sold to consumers** through the

highly interactive Amazon website. *See Milo*, 693 F. App'x at 881 ("Third-party sellers using the Fulfillment by Amazon service maintain full ownership of the products stored by Amazon.").

**2. Defendants' Sales Volume and Offering of Products to Texas Residents**

Mary Kay uses monitoring software that allows it to track Mary Kay products that Defendants have listed for sale on their Amazon storefronts and estimate how many products they have sold. (App. 3-4, Schwegmann Decl. at ¶7.) Mary Kay's software estimates that, since August 2018, Defendants have sold: (1) approximately 1,200 Mary Kay products through their "VestaOnline" storefront for revenue of more than $26,000; and (2) more than 12,100 Mary Kay products through their "Jonsu" storefront for revenue in excess of $355,000. (*Id.*)

Although Mary Kay's monitoring software shows that Defendants have sold a high volume of Mary Kay products through their Amazon storefronts, the software does not and cannot show the identities of customers who have purchased Mary Kay products from Defendants or where they are located. (*Id.* at ¶8.) That information is uniquely in the possession of Amazon.com and Defendants, and can be obtained by Mary Kay only through discovery. (*Id.*)

Defendants do not appear to prevent consumers located in Texas from purchasing from either of their Amazon storefronts. (*Id.* at ¶4.) When an Amazon user places a product offered by either of Defendants' Amazon storefronts into their "Cart," navigates to the "checkout" page, and then enters a "shipping address" that is located in Texas, the user is able to complete the transaction and purchase the product offered by Defendants. (*Id.*)

**3. Forum Selection Clause in Defendants' Contracts with Mary Kay**

The contract that Montoya and Lobato entered into with Mary Kay includes the following language:

> This Agreement shall be governed by the laws of the State of Texas as to all matters. The parties further agree that if any dispute or controversy arises between them concerning any matter relating to this Agreement that any issues which either party may elect to submit for legal jurisdiction shall be submitted to the jurisdiction of the courts of the State of Texas, with the exception of any dispute or controversy arising out of or relating to the use or misuse of Mary Kay® intellectual property, which dispute may, at the sole discretion of the Company, be submitted to the exclusive jurisdiction of the Federal District Court for the Northern District of Texas. The parties agree that the venue for any state court action shall be Dallas, Dallas County, Texas, and that the venue for any federal court action shall be the Dallas Division of the Federal District Court for the Northern District of Texas.

(App. 21, Exhibit E to Schwegmann Decl.)[4]

#### 4. Corporate Documents of Soloderma LLC

Corporate filings for Soloderma LLC identify Anyelly Montoya as the "Chief Executive Officer" and lone member of Soloderma LLC. (*See* App. 23-24, Exhibits G and H to Schwegmann Decl.) The corporate filings do not identify any other individual as a member or officer of Soloderma LLC. (*See* App. 5, Schwegmann Decl. at ¶16; App. 22-24, Exhibits F, G, and H to Schwegmann Decl.)

## III. LAW AND ARGUMENT

### A. This Court Has Specific Personal Jurisdiction Over Defendants On Mary Kay's Trademark-Related Claims

#### 1. Legal Standards

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction; and (2) the exercise of jurisdiction is consistent with due process under the United States Constitution. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute

[4] The terms and conditions of the contract Montoya and Lobato entered into with Mary Kay have been submitted as Exhibit E to the Schwegmann Declaration (App. 20-21). The electronic signature pages of the contracts are Exhibits C and D to the Schwegmann Declaration (App. 18-19). (*See* App. 4-5, Schwegmann Decl. at ¶¶ 10-12.)

extends to the limits of due process, the only question in this case is whether exercising jurisdiction over Defendants is consistent with federal due process. *Shippitsa Ltd. v. Slack*, No. 3:18-CV-1036-D, 2019 U.S. Dist. LEXIS 121994, at *6 (N.D. Tex. July 23, 2019).

"The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when: (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (citations omitted).

A nonresident defendant's "minimum contacts" with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. A court has specific personal jurisdiction over a nonresident defendant if: (1) the defendant has "purposefully directed" its activities at residents of the forum; and (2) the litigation "result[s] from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Shippitsa*, 2019 U.S. Dist. LEXIS 121994, at *7 (quoting *Archer & White, Inc. v. Tishler*, No. 3:03-CV-0742-D, 2003 U.S. Dist. LEXIS 19010, at *6 (N.D. Tex. Oct. 23, 2003)).[5]

When, as here, a plaintiff alleges that a defendant is subject to specific jurisdiction "based on online interactions via an Internet website," the Fifth Circuit assesses the level of interactivity of the defendant's website using the "sliding scale" approach first adopted in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *Shippitsa*, 2019 U.S. Dist. LEXIS 121994, at *9. Under that approach, a court must decline to exercise personal jurisdiction "where a website is nothing more than a passive advertisement," but jurisdiction is proper "where a

[5] Mary Kay does not allege that Defendants are subject to general personal jurisdiction in Texas.

website facilitates contractual relationships and the knowing and repeated transmissions of computer files over the Internet." *Id.* at *9-10. When a website "falls somewhere in between" these two scenarios, "'the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website.'" *Id* at 10 (quoting *Mink*, 190 F.3d at 336).

When the basis for jurisdiction is that a defendant sold infringing products through a website, there must be "actual Internet sales to forum residents" rather than the "mere possibility of sales." *Shippitsa Ltd. v. Slack*, No. 3:18-CV-1036-D, 2019 U.S. Dist. LEXIS 9602, at *15-16 (N.D. Tex. Jan. 22, 2019) (collecting cases); *Springboards to Educ., Inc. v. Hamilton Cty. Read 20*, No. 3:16-CV-2509-B, 2017 U.S. Dist. LEXIS 109999, at *10 (N.D. Tex. July 14, 2017). But when there *are* actual sales to forum residents, jurisdiction is proper even when the sales are very few in number or are a small percentage of the defendant's total online sales. *See, e.g., Tempur-Pedic Int'l, Inc. v. GO Satellite Inc.*, 758 F. Supp. 2d 366, 374-75 (N.D. Tex. 2010) (exercising personal jurisdiction on basis of two admitted sales to Texas residents through highly interactive commercial website); *American Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 898, 901-02 (N.D. Tex. 2000) (exercising personal jurisdiction where online sales into Texas constituted less than 0.5% of defendant's total online sales).

### 2. Defendants Have Established Sufficient "Minimum Contacts" With Texas By Selling Infringing Products Bearing Mary Kay's Trademarks Into Texas Through Their Amazon Storefronts

This district and courts from around the country have repeatedly held that an out-of-state, online seller defendant has "purposefully directed" its activities at residents of the forum state and created contacts that gave rise to the plaintiff's lawsuit when, as in this case: (1) the defendant sold materials that infringe the plaintiff's intellectual property through an interactive, commercial website; and (2) the defendant sold infringing materials into the forum state with knowledge that

the plaintiff is harmed in the forum state. *See, e.g., Shippitsa*, 2019 U.S. Dist. LEXIS 121994, at *10-16 (defendant subject to specific jurisdiction because it sold products that infringed plaintiff's trademarks to consumers in Texas through interactive commercial website that "offered free shipping to anywhere in the world," had interface that allowed visitors to "chat" with defendant, and allowed visitors to "follow up on orders that they had already placed"); *Tempur-Pedic.*, 758 F. Supp. 2d at 373-77 (defendant subject to personal jurisdiction because it admitted selling two infringing products to consumers in Texas through interactive commercial website that "allow[ed] placement of online orders and enable[d] communication between Texas-based customers and [defendant's] sales staff via live chat and email."); *Std. Process, Inc. v. Antitrend LLC*, 19-cv-99-jdb, 2020 U.S. Dist. LEXIS 17386, at *9-13 (W.D. Wis. Feb. 4, 2020) (defendant subject to personal jurisdiction because it sold 13 infringing products to 11 consumers in forum state through Amazon); *Otter Prods. v. Cloudseller, LLC*, No. 19-cv-00630-JLK, 2019 U.S. Dist. LEXIS 224515, at *9-13 (D. Colo. Dec. 3, 2019) (defendant subject to personal jurisdiction because it sold infringing products into forum state through Amazon); *Leach v. Pharmedoc Inc.*, No. CIV-16-1034-M, 2017 U.S. Dist. LEXIS 33565, at *5-6 (W.D. Okla. Mar. 9, 2017) (defendant subject to personal jurisdiction because it "was operating a commercial business through Amazon," its "internet-based activities established regular business with foreign jurisdictions, including [the forum state]," and it had sold "at least four, and likely more" infringing materials to residents in the forum state).[6]

---

[6] *See also Imation Corp. v. Sanho Corp.*, 2016 U.S. Dist. LEXIS 103626, at *6-7 (D. Minn. Aug. 5, 2016) (defendant subject to personal jurisdiction because it sold one infringing material to a customer in forum state through Kickstarter.com); *Valtech, LLC v. 18th Ave. Toys, Ltd.*, No. 14 C 134, 2015 U.S. Dist. LEXIS 17138, at *8-13 (N.D. Ill. Feb. 12, 2015) (defendant subject to personal jurisdiction because it sold infringing materials into forum state even though those sales were "very minimal in comparison to overall sales"); *Bose Corp. v. Neher*, No. 09-11479-PBS, 2010 U.S. Dist. LEXIS 143644, *9-16 (D. Mass. July 13, 2010), *adopted by Bose Corp. v. Neher*, No. 09-11479, 2010 U.S. Dist. LEXIS 144028 (D. Mass. July 30, 2010) (defendant subject to personal jurisdiction because she sold one infringing product over eBay to resident of forum state); *Allstar Mktg Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d

These cases reason that, by selling products through a commercial website, defendants are knowingly and deliberately reaching out beyond their home state to avail themselves of the benefits of other states and make contacts with other states. As one court put it:

> **Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it.**

*Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006) (emphasis added); *see also Tempur-Pedic*, 758 F. Supp. 2d at 376 (concluding that defendant "cannot open itself for business to every state in the United States and then feign surprise when it receives an order from a resident of one of the states . . . . [a]s *Zippo* itself notes, 'If [the defendant] had not wanted to be amendable to jurisdiction in [the forum state]; the solution would have been simple: it could have chosen not to sell its services to [forum[state] residents.").

These cases also reason that it does not matter if defendants have sold only a minimal amount of infringing products into the forum state and sell products nationwide because "the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts," and every sale into the forum is a very high-quality contact. *Stomp, Inc. v. Neato*, 61 F. Supp. 2d 104, 107 (C.D. Cal. 1999).[7]

---

1109, 1121-23 (C.D. Cal. 2009) (collecting cases and holding that defendants were subject to personal jurisdiction because they did not offer evidence contradicting plaintiffs' allegation that defendants regularly sold infringing materials into forum state through a commercial website).

[7] *See also Tempur-Pedic.*, 758 F. Supp. 2d at 373-77 (exercising jurisdiction on basis of two admitted online sales to Texas residents); *Std. Process, Inc. v. Antitrend LLC*, 19-cv-99-jdb, 2020 U.S. Dist. LEXIS 17386, at *9-13 (defendant sold 13 infringing products to forum state residents through Amazon); *Leach*, 2017 U.S. Dist. LEXIS 33565, at *5-6 (defendant sold 4 infringing materials to forum state residents through Amazon); *Imation Corp.*, 2016 U.S. Dist. LEXIS 103626, at *6-7 (D. Minn. Aug. 5, 2016) (defendant sold 1 infringing material to forum state resident); *Bose Corp.*, 2010 U.S. Dist. LEXIS 143644, at *9-16 (same); *American Eyewear*, 106 F. Supp. 2d at 900 ("Even a single contact can support specific jurisdiction."); *Salu, Inc. v. Original Skin Store*, No. CIV. S-08-1035 FCD/KJM, 2008 U.S. Dist. LEXIS 73225, at *18-19 (E.D. Cal. Aug. 13, 2008) (rejecting argument that defendant "did not interject itself in [forum state] any more than it did in any other state" because online sales showed that defendant

Finally, every court that has considered the issue (to Mary Kay's knowledge) has held that a 3P seller's use of the "Fulfillment By Amazon" service when selling on Amazon has **no effect on jurisdictional analysis** because FBA sellers retain ownership of their products until they are purchased (*i.e.*, Amazon.com is not the "seller" of products sold FBA) and are paid when consumers purchase their products. *See Otter Prods.*, 2019 U.S. Dist. LEXIS 224515, at *10-11 (collecting cases and concluding that "[i]t does not matter that Amazon, rather than Defendants, is responsible for fulfilling and shipping sales of the allegedly infringing goods to customers in [the forum state]."); *Leach*, 2017 U.S. Dist. LEXIS 33565, at *5 (concluding that defendant's sales fulfilled by Amazon.com "are properly attributed to defendant when determining whether it has purposefully directed its activities at [forum state] residents."); *TeleBrands Corp. v. Mopnado*, No. 2:14-07969, 2016 U.S. Dist. LEXIS 10671, at *22-26 (D.N.J. Jan. 12, 2016) (explaining how "fulfilled by Amazon.com" service works and concluding that it has no impact on jurisdictional analysis because "Defendant is intentionally using Amazon's vast, established infrastructure to sell and ship its products to consumers nationwide, and is paying Amazon for the privilege."); *Std. Process, Inc. v. KDealz Ltd. Co.*, No. 17-cv-909-jdp, 2018 U.S. Dist. LEXIS 102976, at *6-7 (E.D. Wis. June 20, 2018) ("[T]he bottom line is that [defendant] is in the business of selling Standard Process products online to customers nationwide. The fact that it conducts that business through Amazon doesn't shield it from personal jurisdiction any more than shipping products via FedEx would.").

Here, Defendants are selling infringing products on a website—Amazon—that is at least as interactive as the websites at issue in *Shippitsa* and *Tempur-Pedic*, where this Court exercised personal jurisdiction over defendants who had sold products to Texas residents through the

had "purposefully interjected itself into" [California] and "whether [defendant] had purposefully interjected itself into other states through similar conduct is irrelevant to the court's inquiry.").

websites. (*See* App. 2, Schwegmann Decl. at ¶3 (discussing interactivity of the Amazon website).) As shown above, numerous courts in other jurisdictions have also exercised jurisdiction over defendants who, like Defendants in this case, sold infringing products into the forum state ***as third-party sellers on Amazon***. *See, e.g., Std. Process*, 2020 U.S. LEXIS 17386, at *9-13; *Otter Prods.*, 2019 U.S. Dist. LEXIS 224515, at *9-13; *Leach*, 2017 U.S. Dist. LEXIS 33565, at *5-6. Further, there is no question in this case—and Defendants have not disputed—that Mary Kay's Trademark-Related claims "arise out of or relate to" Defendants' alleged sales of Mary Kay products to Texas residents, as the thrust of Mary Kay's claims is that Defendants are creating a likelihood of confusion and harming Mary Kay's goodwill by selling "materially different" products to consumers that bear Mary Kay's trademarks. (ECF 1 at ¶¶ 274-274, 289-380.)

Accordingly, the only remaining question is whether Defendants have sold any Mary Kay products to consumers in Texas. Mary Kay alleged that Defendants ***have*** sold products to Texas consumers through the regular course of business (*id.* at ¶¶ 62, 279); in response, Defendants feigned ignorance and swore that they are "not provided with the name of address" of customers who purchased from them on Amazon. (Defs' App. at 3 ¶11, 6-7 ¶9.) However, Mary Kay has shown those representations are false and that Defendants can easily see—and submit to this Court—their sales data that would show how many Mary Kay products they have sold to Texas residents. (*See* App. 3, Schwegmann Decl. at ¶6; App. 9-17, Exhibit B to Schwegmann Decl.) Accordingly Defendants have failed to controvert Mary Kay's allegation that they have sold products into Texas—despite having the full ability to do so—and their alleged sales must therefore be accepted as true, establishing "minimum contacts" with Texas. *See Shippitsa*, 2019 U.S. Dist. LEXIS 121994, at *8 (when no evidentiary hearing is held on motion to dismiss for lack of personal jurisdiction, court must accept as true all uncontroverted, non-conclusory allegations in complaint); *Allstar*, 666 F. Supp. 2d at 1122 (accepting as true plaintiff's allegation that defendants

sold infringing products into forum state because defendants did not offer any "conflicting evidence"); *Imation*, 2016 U.S. Dist. LEXIS 103626, at *6-7 (D. Minn. Aug. 5, 2016) (accepting as true plaintiff's allegation that defendant sold infringing material to resident of forum state because plaintiff need only "make a prima facie showing of personal jurisdiction").[8]

If this Court concludes for any reason that Mary Kay must present evidence of specific sales of Mary Kay products by Defendants to Texas residents to establish personal jurisdiction, then Mary Kay requests leave to take jurisdictional discovery and file a supplemental brief before Defendants' motion is resolved. Courts have discretion to permit a party to conduct jurisdictional discovery when the party makes a "preliminary showing of jurisdiction" by identifying the "discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Valtech Solutions, Inc. v. Davenport*, No. 3:15-CV-3361-D, 2016 U.S. Dist. LEXIS 67139, at *4-5 (N.D. Tex. May 23, 2016) (quotation omitted). Here, Mary Kay has made a preliminary showing of jurisdiction because, for all the reasons above, this Court has

---

[8] Defendants cite numerous cases in which personal jurisdiction was lacking because: (1) defendants operated websites that did not allow visitors to purchase products; (2) websites allowed for sales but plaintiffs did not allege that defendants had made any sales to residents of the forum state; or (3) the only sales into the forum state that plaintiffs alleged were sales *to the plaintiff*, to "manufacture" jurisdiction. (ECF 19 at 13-14.) None of these cases has any bearing on this case, where Mary Kay alleged that Defendants regularly sell Mary Kay products to consumers in Texas and Defendants chose not to submit any contradicting evidence. Mary Kay alleged that Defendants are subject to jurisdiction because they **<u>have sold</u>** products to Texas residents, not because of the "mere possibility" that Texas residents ***could*** purchase from Defendants.

Defendants also misstate Mary Kay's complaint by asserting that Mary Kay alleged that Defendants are subject to jurisdiction merely because Mary Kay is located in Texas and "feels the effects" of Defendants' infringement in Texas. (ECF 19 at 1, 14-16.) Mary Kay made no such allegation. Instead, Mary Kay properly alleged that Defendants' knowledge of Mary Kay's presence in Texas and the harm it suffers there **<u>combined with</u>** Defendants' sales into Texas subject Defendants to specific jurisdiction in Texas. (ECF 1 at ¶ 62); *see also Std. Process*, 2020 U.S. Dist. LEXIS 17386, at *11-12 (concluding that defendant was subject to personal jurisdiction because of its sales into forum state in "combination" with plaintiff's presence in forum state, in response to complaint that online seller defendants can be sued "in literally any state where [they] shipped at least one item" if "making a few sales through an interactive website" is sufficient to support specific jurisdiction). Thus, Defendants' arguments on this point are irrelevant to the resolution of their motion.

personal jurisdiction over Defendants as long as they have sold Mary Kay products into Texas. Mary Kay could obtain this information with a simple request for production to Defendants or Amazon.com, seeking data relating to all Mary Kay products sold by Defendants to consumers with shipping addresses in Texas. (App. 4, Schwegmann Decl. at ¶8.) Further, it is exceedingly likely that Defendants ***have*** in fact sold a significant amount of products into Texas because: (1) they have sold thousands of Mary Kay products through their storefronts (*id.* at App. 3-7, ¶7); (2) they appear to have not taken any action to prevent consumers located within Texas from purchasing from them (*id.* at App. 2 ¶4); and (3) Texas is a highly populous state. However, if Defendants do not themselves submit their sales data with their reply brief, then Mary Kay cannot submit evidence of actual sales by Defendants to Texas consumers unless it is permitted to take jurisdictional discovery. (*Id.* at App. 4 ¶8.)[9]

### 3. Defendants Have Not Shown That The Exercise of Jurisdiction Would Offend Traditional Notions of Fair Play and Substantial Justice

Once a plaintiff establishes "minimum contacts" between defendants and the forum state, "the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable."[10] *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir.

---

[9] If, with their reply brief, Defendants again fail to submit any evidence that *contradicts* Mary Kay's allegations of their sales into Texas, this Court should accept Mary Kay's allegations as true for the reasons presented above. Mary Kay has shown that Defendants have access to their sales data that would allow them to dispute Mary Kay's allegations with evidence—if Defendants have actually not sold any Mary Kay products into Texas—and Mary Kay should not be forced to take discovery when Defendants could easily obviate the need for discovery by simply downloading and submitting their Amazon-Fulfilled Shipments Report. (*See* App. 9-17, Exhibit B to Schwegmann Decl.)

If Defendants merely submit affidavits with their reply brief in which they assert they have not "directly" or "indirectly" sold any Mary Kay products into Texas but without submitting their sales data, Mary Kay requests leave to take jurisdictional discovery to confirm the accuracy of Defendants' assertions. For the reasons in this paragraph, it is simply not believable that Defendants have not sold any Mary Kay products into Texas given the volume of their sales.

[10] Defendants assert, without citation, that "the burden remains with Mary Kay" because Mary Kay has not "establish[ed] minimum contacts between Defendants and Texas." (ECF 19 at 22.) This is a misstatement of the law.

2003). A defendant must present a "compelling case" to make this showing, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985), which the Fifth Circuit has described as "rare." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

Here, Defendants barely offer any argument on this issue and do not come close to showing that jurisdiction would be unreasonable despite their contacts with Texas. (ECF 19 at 22.) They merely complain that they would face a "substantial" burden litigating in Texas because they and their "business operations" are located in California. (*Id.*) But courts have repeatedly held in cases involving online sales of infringing products that it was reasonable to exercise jurisdiction because, among other reasons: (1) the forum state has an interest in protecting consumers from consumer confusion, *Tempur-Pedic*, 758 F. Supp. 2d at 377; (2) states have a strong interest in adjudicating disputes that involve alleged infringement of a resident's intellectual property, *Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC*, 186 F. Supp. 2d 1158, 1166-67 (D. Kan. 2002); and (3) "modern means of communication and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum." *Salu*, 2008 U.S. Dist. LEXIS 73225, at *19 (quotation marks and citation omitted). Those same reasons are dispositive here.

**4. Mary Kay Properly Pleaded Its Trademark-Related Claims Against Montoya In Both Her Individual Capacity and her Capacity as a Corporate Officer of Soloderma LLC**

As a final matter, Defendants contend that this Court lacks personal jurisdiction over Montoya on Mary Kay's Trademark-Related Claims, even if it has personal jurisdiction over Soloderma LLC due to its sales to Texas residents, because Mary Kay has not adequately shown that she is the "alter ego" of Soloderma LLC. (ECF 19, Motion to Dismiss, at 19-21.) This contention misses the mark for two separate reasons.

First, Mary Kay pleaded that Montoya is responsible for sales of infringing products through the "VestaOnline" Amazon storefront in both her capacity as a corporate officer of

Soloderma LLC **and** in her individual capacity. (ECF 1 at ¶¶ 35-37.) Defendants ignore Mary Kay's allegation that Montoya is liable in her individual capacity, and assume that Montoya can be liable in this case only if Mary Kay is able to "pierce the corporate veil" of Soloderma LLC. But Mary Kay is entitled to plead in the alternative that Montoya is liable in both her individual capacity and as a corporate officer. *See Wellnext LLC v. OVM LLC*, No. 17-CV-62107, 2017 U.S. Dist. LEXIS 218128, at *22-24 & n.2 (S.D. Fla. Feb. 16, 2017) (concluding that plaintiff properly pleaded that individual was responsible for operation of Amazon storefront in both his individual capacity and in his capacity as officer of corporation that allegedly operated storefront).

Second, even if this Court concludes that Montoya can be liable for Mary Kay's Trademark-Related Claims only as a corporate officer of Soloderma LLC, Mary Kay properly pleaded Montoya's liability on that basis. It is well-established that "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind [infringing activity carried out by the corporation] is personally liable for such infringement without regard to piercing of the corporate veil." *Taylor Made Golf Co. v. MUT Consulting Group*, 265 F. Supp. 2d 723, 746 (N.D. Tex. 2003) (quoting *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994)); *see also John Crane Prod. Solutions, Inc. v. R2R & D, LLC*, No. 3:11-CV-3237-D, 2012 U.S. Dist. LEXIS 63164, at *11 (N.D. Tex. May 4, 2012). The reasoning for this principle is that, because "a corporation can act only through individuals," infringement by a corporation is "obviously . . . caused by some one or more persons either officers or employees" and "[i]f an individual actively and knowingly caused the infringement, he is personally liable." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (citations and quotation marks omitted).

Mary Kay pleaded that Montoya is "liable for infringing activities of Soloderma LLC without regard to piercing the corporate veil" because she "directs, controls, ratifies, participates in, or is the moving force behind the sales of infringing products bearing Mary Kay's trademarks by

Soloderma LLC." (ECF No. 1 at ¶ 39.) Defendants wholly ignore this allegation in this motion. Further, although Montoya appears to assert that she does not personally sell products through the "VestaOnline" storefront, Soloderma LLC concedes that it ***does*** sell products through the storefront. (Defs' App.at 2-3 ¶¶8-12.) Montoya also admits that she is the "sole member of Soloderma" (Defs' App. at 1 ¶2), which is confirmed by corporate documents filed for Soloderma that list Montoya as the "Chief Executive Officer" and do not identify any other individual as a member or officer of Soloderma. (*See* App. 22-24, Exhibits F, G, and H to Schwegmann Decl.)[11]

Thus, the evidence establishes that the only person who could be causing Soloderma LLC to sell products through the "VestaOnline" storefront is Montoya herself,[12] and she is accordingly liable for infringement caused by the sales as one who "directs, controls, ratifies, participates in, or is the moving force" behind the infringement. *See John Crane*, 2012 U.S. Dist. LEXIS 63164, at *11-12 (holding that complaint stated claim against individual defendant who was sole principal of corporations that allegedly infringed plaintiff's trademark because complaint sufficiently pleaded that individual "was involved in the alleged infringement."); *Jack Preston Wood: Design, Inc. v. B L Bldg. Co.*, No. H-03-713, 2004 U.S. Dist. LEXIS 30511, at *25-26 (S.D. Tex. June 22, 2004) (denying motion for summary judgment which argued that plaintiff had not "pierced the corporate veil" to establish officers' individual liability because there was question of fact regarding whether officers ratified or participated in infringement carried out by corporation).

Accordingly, this Court has specific personal jurisdiction over all three Defendants (Lobato, Soloderma LLC, *and* Montoya) on Mary Kay's Trademark-Related Claims.

---

[11] Montoya also concedes that she lives at the same as address as Lobato, her husband, who admittedly operates the "Jonsu" Amazon storefront. (Defs. App. at 3 ¶ 13, 5 ¶ 2, 6 ¶ 6.)

[12] For example, Montoya has not submitted evidence that other officers at Soloderma LLC caused the entity to sell products on Amazon and that she, as the Chief Executive Officer, somehow had no involvement in or knowledge of those sales.

### B. This Court Has Specific Personal Jurisdiction Over Defendants On Mary Kay's Remaining Claims for Breach of Contract and Tortious Interference

#### 1. This Court Has Pendent Personal Jurisdiction Over Defendants on Mary Kay's Remaining Claims

Defendants appear to contend that, even if this Court has personal jurisdiction over them with respect to Mary Kay's Trademark-Related Claims, this court lacks personal jurisdiction over them with respect to Mary Kay's remaining claims for breach of contract and tortious interference with existing contracts. This contention is wrong.

First, this Court can—and should—exercise pendent personal jurisdiction over Mary Kay's remaining claims. As this Court has previously explained:

> Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction. A defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended in this circumstance.

*Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008). Although the Fifth Circuit has not yet expressly ruled on pendent personal jurisdiction, district courts within the Fifth Circuit have invoked the doctrine and all other circuits that have considered the doctrine have uniformly approved of it. *Id.*; *see also Canyon Furniture Co. v. Sanchez*, No. SA-18-cv-00753-OLG, 2018 U.S. Dist. LEXIS 224455, at *35-36 (W.D. Tex. Nov. 8, 2018). The exercise of pendent personal jurisdiction is discretionary. *Id.* at *36.

Here, there is no question that Mary Kay's claims for breach of contract and tortious interference arise from the same nucleus of operative fact as its Trademark-Related Claims. The

basis for its breach of contract claim is that Defendants are selling Mary Kay products on Amazon—the same sales that give rise to its Trademark-Related Claims. (ECF 1 at ¶¶ 293-294, 394-402.) And the basis for its tortious interference claim is that Defendants are interfering with Consultants' contracts with Mary Kay and causing Consultants to breach those contracts by purchasing products from Consultants and then reselling them. (*Id.* at ¶¶ 285-292, 381-393.) All of Mary Kay's claims arise from Defendants' acquisition and sale of products bearing Mary Kay's trademarks to Texas residents, which create "minimum contacts" for personal jurisdiction on Mary Kay's Trademark-Related Claims. Further, Defendants do not address pendent personal jurisdiction or explain how they would be inconvenienced defending against Mary Kay's state law claims when they are already before this Court on Mary Kay's Trademark-Related Claims.

**2. There is an Independent Basis for this Court to Exercise Personal Jurisdiction Over Defendants on Mary Kay's Remaining Claims**

Even if this Court declines to exercise pendent personal jurisdiction, there is regardless an independent basis for personal jurisdiction over Defendants on Mary Kay's remaining claims.

First, Montoya and Lobato are subject to personal jurisdiction on Mary Kay's claim for breach of contract because, when they entered into their contracts with Mary Kay, they agreed that any action for breach of contract (as a dispute "relating to" the contract) "shall be submitted to the jurisdiction" of the state or federal courts in Dallas County, Texas. (App. 21, Exhibit E to Schwegmann Decl.); *see Mitsui & Co. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (forum-selection clauses are presumptively valid).[13]

Second, Defendants are subject to personal jurisdiction on Mary Kay's claim for tortious

[13] Although Mary Kay did not allege the existence of the forum-selection clause in its complaint, courts may consider evidence outside the complaint in resolving motions to dismiss for lack of personal jurisdiction. *Shippitsa*, 2019 U.S. Dist. LEXIS 121994, at *8-9. Mary Kay also referenced other contents of its contracts with Defendants in its complaint. (ECF 1 at ¶¶ 293-294, 395-396.) Although Mary Kay does not believe it is necessary to do so, it will amend its complaint to add allegations about the forum-selection clause if this Court requests.

interference because that claim arises from both: (1) Defendants' sales to Texas residents, and (2) Defendants' contracts with Mary Kay. Regarding sales, Mary Kay would not have a claim for tortious interference but for Defendants' resale of the products they acquire from Consultants, because Mary Kay's contracts prohibit Consultants from selling to "resellers." (*See* App. 20, Exhibit E to Schwegmann Decl. at ¶1; ECF 1 at ¶ 386 ("By purchasing Mary Kay products from Consultants and then reselling them on the Internet, Defendants caused and induced Consultants to breach their contracts with Mary Kay.").) Thus, Defendants' sales into Texas constitute "minimum contacts" for personal jurisdiction on Mary Kay's tortious interference claim in addition to its Trademark-Related Claims.

Mary Kay's contracts with Defendants—additional contacts with Texas—also give rise to Mary Kay's tortious interference claim because Defendants would not know that Consultants are prohibited from selling to resellers (such as themselves) but for the fact that they entered into contracts with Mary Kay that included the prohibition. (ECF 1 at ¶¶ 387-388); *Mary Kay Inc. v. Weber*, 601 F. Supp. 2d 839, 861 (N.D. Tex. 2009) (to prove tortious interference, plaintiff must show that defendant "willful[ly] and intentional[ly]" interfered with contract). In addition, courts determine whether personal jurisdiction exists regarding a tortious interference claim by "examining the nexus between the forum and the injured contractual relationship." *AutoOpt Networks, Inc. v. GTL USA, Inc.*, No. 3:14-CV-1252-D, 2015 U.S. Dist. LEXIS 11306, *21 (N.D. Tex. Jan. 30, 2015) (quoting *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 402 (5th Cir. 2009)). Here, a sufficient nexus exists because every contract that Defendants interfere with includes a Texas choice-of-law provision and includes Mary Kay—a Texas resident—as a party. *See id.*

(holding that personal jurisdiction existed on tortious interference claim in part because contract was governed by Texas law and included a Texas-based corporation as one of the parties).[14]

## IV. CONCLUSION

For these reasons, this Court should deny Defendants' motion to dismiss.

DATED: March 6, 2020

Respectfully submitted,

*<u>/s/ Christopher J. Schwegmann</u>*
Christopher J. Schwegmann
Texas State Bar No. 24031515
cschwegmann@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: 214-981-3800
Facsimile: 214-981-3839

Kent A. Britt
Ohio Bar No. 0068182
kabritt@vorys.com
**VORYS, SATER, SEYMOUR AND PEASE LLP**
301 E. Fourth Street, Suite 3500
Cincinnati, OH 45202
Telephone: 513-723-4488
Facsimile: 513-852-7818

**ATTORNEYS FOR PLAINTIFF MARY KAY INC.**

[14] Defendants argue that this Court has personal jurisdiction over them on Mary Kay's tortious interference claim *only* if Mary Kay shows that Defendants purchased products from Consultants located in Texas, but the two cases Defendants cite do not support this position and bear no factual resemblance to the facts of this case. (ECF 19 at 17.) However, if this Court concludes that Mary Kay **<u>does</u>** need to show that Defendants have purchased from Consultants in Texas for this Court to be able to exercise jurisdiction over Defendants on Mary Kay's tortious interference claim, then Mary Kay requests leave to take jurisdictional discovery into the identities and locations of all of Defendants' sources of the Mary Kay products they have resold. The proffered discovery would be straightforward and allow Mary Kay to submit the evidence Defendants assert is necessary for this Court to have personal jurisdiction over them on Mary Kay's tortious interference claim.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed with the Court on March 6, 2020. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Kent A. Britt*
Kent A. Britt